AMERICAN INTERNATIONAL HOSPITAL, Plaintiff-Appellant, *v.* CHICAGO TRIBUNE COMPANY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 82—714

Opinion filed December 20, 1983.

Donald T. Morrison & Associates, P.C., of Waukegan (Donald T. Morrison and Joseph T. Morrison, of counsel), for appellant.

Reuben & Proctor, of Chicago (Lawrence Gunnels and Charles J. Sennet, of counsel), for appellees Chicago Tribune Company and William Gaines.

Fraterrigo, Best & Beranek, of Wheaton, for appellee The Joint Commission on Accreditation of Hospitals.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, American International Hospital (Hospital), appeals from an order of the circuit court of Cook County dismissing with prejudice its three count amended complaint for defamation against defendants Chicago Tribune, William Gaines (collectively Tribune) and the Joint Commission on Accreditation of Hospitals (JCAH). The principal issues raised on appeal include whether: the transfer of venue to Cook County was proper; the allegedly libelous article was true; and, the amended complaint states a cause of action for defamation.

For the reasons hereinafter presented, we affirm in part, vacate in part and remand.

On the same day that the disputed article was published, September 19, 1980, the Hospital filed its complaint in the circuit court of Lake County. On November 18, 1980, pursuant to the Tribune's timely motion, the court transferred the cause to the Cook County circuit court. There the circuit court dismissed the complaint but granted the Hospital leave to file an amended complaint. The subject of the original and amended complaint was an article, reproduced as follows:

# Zion hospital refused accreditation by panel

By William Gaines

A CHICAGO-AREA hospital under investigation for providing controversial and sometimes questionable treatments to cancer patients has been refused accreditation by the Joint Commission on the Accreditation of Hospitals [JCAH], The Tribune learned Thursday.

The accreditation committee of the commission decided not to renew the accreditation of American International Hospital, a 93-bed hospital in Zion, as the result of findings in its June survey of the hospital. The hospital was notified of the decision earlier this month and may appeal the decision, a commission spokesman said.

A Tribune Task Force investigation disclosed last March that the hospital was attracting desperate cancer victims from throughout the country by offering controversial and sometimes unproven therapies.

THE TASK FORCE also disclosed that the doctor who started a highly experimental cancer treatment program at the hospital had been disqualified from participation in a state medical aid program in New York because of unacceptable medical practices.

Loss of accreditation does not mean the hospital will be forced to close. Accreditation by the JCAH, a private, national agency funded by hospitals, assures a hospital of eligibility in Medicaid and Medicare programs and of rec-

Continued on page 4, col. 1

# Commission denies Zion hospital its accreditation

Continued from page one

ognition by most insurance companies. Without accreditation, a hospital must apply for federal inspection before qualifying for Medicaid or Medicare.

Loss of JCAH accreditation generally means the hospital loses standing in the professional community and its public image is marred, the commission spokesman said. However, the spokesman said the JCAH does not make public its survey finding.

DONALD MORRISON, a lawyer for American International, said the JCAH decision had nothing to do with the hospital's cancer treatments but rather reflected JCAH criticism of the hospital's housekeeping and record-keeping practices. He said the hospital is appealing the decision.

"It's not a big deal," Morrison said. "I am confident that it will be straightened out. It's of a minor nature. There's nothing wrong with this hospital."

However, Morrison declined to make public the findings of the JCAH accreditation survey.

The hospital and its doctors also have been under investigation by the Illinois Department of Public Health and the Illinois Department of Registration and Education.

At a meeting of the Illinois Hospital Licensing Board in June, state investigators and special consultants hired by the state Department of Public Health expressed concerns about the hospital's use of Laetrile; its use of a medical procedure called hyperthermia, a highly experimental procedure in which a patient's body temperature is raised to 108 degrees in an effort to kill cancer cells; and its use of coffee enemas.

The use of Laetrile is part of an unconventional cancer treatment offered at American International that officials there call the "metabolic" program.

The program can include a special diet, large doses of vitamins, enzymes, coffee enemas, and sometimes Laetr"e.

Count I of the amended complaint alleged, *inter alia*, that: the Hospital's accreditation with JCAH had been continuously maintained without any interruption from 1976 to the present time; a one-year accreditation may be granted for only three consecutive years; based upon an error in JCAH records, JCAH believed that the Hospital had been granted three prior one-year accreditations consecutively, and on that basis decided not to accredit the Hospital; a decision by the accreditation committee to revoke a hospital's accreditation (preliminary adverse decision) does not become final until 20 days after a hospital receives notice of it and then only if the hospital chooses not to appeal or abandon an appeal; if the hospital appeals the preliminary adverse decision, the hospital's previous accreditation remains in effect while the appeal is pending;[1] the Hospital appealed the preliminary adverse decision on September 10, 1980; and on November 4, 1980, the accreditation committee withdrew its preliminary adverse decision and accredited the Hospital for a one-year period.

In addition to the foregoing allegations, count II alleged: prior to the publication of the disputed article, the Tribune published a task force report in which it asserted that the Hospital offered highly suspect and questionable treatment to cancer patients; the publication of the article in dispute was part of a continuing effort of the Tribune to discredit the Hospital; and the article was written and published for the purpose of adding credibility to the prior inaccurate and misleading report. Pursuant to defendants' motion, on March 18, 1982, the amended complaint was dismissed with prejudice. This appeal followed.

I

■ The Hospital challenges the Lake County court order transferring venue to Cook County. The Tribune responds that, since the Hospital's notice of appeal cites neither the order transferring venue nor the Lake County circuit court, it violates Supreme Court Rules 303(c)(1)(i) and (2) (87 Ill. 2d Rules 303(c)(1)(i), (2)). This court, the Tribune contends, lacks jurisdiction to review the order transferring venue.

The appeal from a final judgment draws into question all prior nonfinal orders which produced the judgment. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380.) The

---

[1]The allegation was corroborated by the affidavit of Dr. George Graham, a vice-president of JCAH, submitted by the Tribune in support of its motion to dismiss the original complaint.

Hospital here appeals from the final judgment entered on March 18, 1982. Because the court's prior ruling on venue was interlocutory (*Executive Commercial Services, Ltd. v. Daskalakis* (1979), 74 Ill. App. 3d 760, 393 N.E.2d 1365; *cf.* Ill. Ann. Stat., ch. 110A, par. 306 (Smith-Hurd 1981)) and contributed to the March 18 judgment, we retain jurisdiction to review its validity. See *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1980), 93 Ill. App. 3d 35, 37, 416 N.E.2d 1090, *vacated on other grounds* (1982), 89 Ill. 2d 103.

Turning to the merits of the venue issue, the Hospital contends that the applicable venue statute (Ill. Rev. Stat. 1981, ch. 110, par. 7(4), now par. 2—103(d)) unconstitutionally distinguishes between resident and nonresident defendants. That section provides:

> "Every action against any owner, publisher, editor, author or printer of a newspaper *** for libel contained in that newspaper *** may be commenced only in the county in which the defendant resides or has his, her or its principal office or in which the article was composed or printed, except when the defendant resides or the article was printed without this State, in either of which cases the action may be commenced in any county in which the libel was circulated or published."

■■ A statute is presumed to be valid and the burden is on the party challenging it to show its unconstitutionality. (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 303, 395 N.E.2d 1376.) While the passage of time is not conclusive as to the constitutionality of a statute, it creates a strong presumption against its invalidity. (*Makowicz v. County of Macon* (1980), 78 Ill. 2d 308, 311, 399 N.E.2d 1302.) Since section 7(4) was enacted 46 years ago, in 1937, it enjoys a strong presumption of validity. (See Ill. Ann. Stat., ch. 110, par. 7, Historical and Practice Notes, at 67 (Smith-Hurd 1968).) The classification employed here is sufficiently reasonable to withstand constitutional attack. A nonresident newspaper may be inconvenienced by being sued in any county in which the libel was circulated, but the difference to it between one such county and another is likely to be less than to a resident newspaper. The Hospital has failed to show that the challenged classification is so arbitrary or unreasonable as to be repugnant to due process of law. *Mapes v. Hulcher* (1936), 363 Ill. 227, 230-31, 2 N.E.2d 63.

The Hospital's reliance on *Power Manufacturing Co. v. Saunders* (1927), 274 U.S. 490, 71 L. Ed. 1165, 47 S. Ct. 678 (Holmes and Brandeis, JJ., dissenting) is unjustified. In *Saunders* the venue statute treated foreign corporations without reasonable basis and arbitrarily. (See *American Motorists Insurance Co. v. Starnes* (1976), 425 U.S.

637, 645, 48 L. Ed. 2d 263, 271, 96 S. Ct. 1800, 1804.) Under that venue statute plaintiffs were permitted to sue foreign corporations in any county of the State, whereas the instant statute allows nonresident newspapers to be sued only in those counties of the State where the libel was published or circulated. Moreover, as Justice Holmes cogently stated for the Supreme Court in *Bain Peanut Co. v. Pinson* (1931), 282 U.S. 499, 501, 75 L. Ed. 482, 491, 51 S. Ct. 228, 229, "The interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints." Accordingly, the Hospital's equal protection argument cannot be sustained. See *Starnes; Pinson.*

The Hospital urges that it will not receive impartial treatment from Cook County judges because of their purported dependence on the endorsement of the Tribune Company for retention elections. This argument must also be rejected. The suggestion that a judge would disregard the obligations of his office in the hope of securing a newspaper endorsement is patently untenable.

■ The Hospital maintains, in the alternative, that even assuming the statute's validity, venue may still be obtained in Lake County. It observes that under the applicable special venue statute, quoted in full above, a libel action against a newspaper may be commenced "*** only in the county in which the defendant resides or has his or its principal office or in which the article was composed or printed ***." (Ill. Rev. Stat. 1981, ch. 110, par. 7(4).) It further notes that section 6(1) of the Act (now section 2—102(a)) provides in part that, for purposes of venue, an Illinois corporation "*** is a resident of any county in which it has its registered office or other office or is doing business." The Hospital urges that since the Tribune Company is doing business there, it is a resident of Lake County, for purposes of section 7(4). This conclusion cannot be sustained.

Section 7(4) deals specifically with "any owner, publisher, editor, author or printer of a newspaper or magazine" for libel which they may have uttered. It provides that a newspaper may be sued in "*the* county in which the defendant resides" (emphasis added), thereby contemplating that a newspaper will have but one residence. Section 6 is a general definition section which states that a corporation "is a resident of *any* county in which it has its registered office or other office or is doing business." (Emphasis added.) Adoption of the Hospital's argument would require us to ignore the specific subject matter of section 7, and further would require us to construe the word "the" to mean "any." (*Cf.* Ill. Ann. Stat., ch. 110, par. 7, Historical and Prac-

tice Notes, at 67 (Smith-Hurd 1968) ("[A]lthough by definition a private corporation is a 'resident' of specified counties for venue purposes (Ch. 110, sec. 6(1)), and therefore clearly falls within the multiple defendant provisions of sections 5 and 9, no similar definition appears in section 7").) Further, if a defendant newspaper could be sued in any county in which it had "its registered office or other office or is doing business," then section 7(4)'s proviso allowing venue in which defendant has "its principal office" also would be rendered superfluous and redundant. In order to effectuate the express intention of the legislature (*People v. McCoy* (1976), 63 Ill. 2d 40, 44, 344 N.E.2d 436), we hold that the general definition of corporate residence set forth in section 6 does not affect the specific subject matter of section 7(4). Accordingly, venue was properly transferred to the circuit court of Cook County.

## II

■ The Hospital argues that the gist of the article was that it had been denied or refused JCAH accreditation, which was false. The Tribune counters that the article is nonactionable.

The preliminary question of whether an article may be actionable in libel is a question of law. (See Restatement (Second) of Torts sec. 614(1) (1977); *Troman v. Wood* (1975), 62 Ill. 2d 184, 189, 340 N.E.2d 292.) Under the most recent supreme court decisions, a written statement is to be read in context with the words and implications therefrom given their natural and obvious meaning and the statement may be innocently interpreted if this can be done reasonably. *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195; *Fried v. Jacobson* (1983), 99 Ill. 2d 24.

The circuit court considered the instant amended complaint under the innocent construction rule announced in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148. This rule was expressly modified subsequently by the supreme court in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, and *Fried v. Jacobson* (1983), 99 Ill. 2d 24, as previously noted. The supreme court, in vacating and remanding the decision in *Fried v. Jacobson* back to the circuit court for reconsideration under the *Chapski* rule of construction, observed:

"Inconsistency, inequity, and confusion resulted from dozens of appellate court cases interpreting and applying the rule. The principal criticism being that, because of the rule's mandatory language, courts generally strained to find innocent meanings of words where a defamatory meaning was far more reason-

able. Therefore, this court was persuaded that a modification of the rule was necessary to protect the individual's interest in vindicating his good name and reputation, while allowing the first amendment guarantees that 'breathing space' essential to their faithful exercise. (92 Ill. 2d 344, 350-51.) The rule, as modified, is:

'[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff.' 92 Ill. 2d 344, 352.

As above noted, it appears that the trial and appellate courts did not apply the rule as modified by *Chapski*. The plaintiff here should have the opportunity to have the trial court make that determination." (99 Ill. 2d 24, 28-29.)

In accordance with the foregoing, the Hospital should have the opportunity to have the circuit court consider its amended complaint under the rule enumerated in *Chapski v. Copley Press*, and its dismissal, therefore, must be vacated and remanded.

## III

◼ The JCAH contends that the Hospital's brief is directed solely at the Tribune newspaper article and that, therefore, the Hospital has waived the right to argue any ground for reversal of the order dismissing the amended complaint as to the JCAH. In its motion before the circuit court, the JCAH incorporated by reference the motion to dismiss filed by the Tribune together with the affidavits and briefs in support thereof. The Hospital observes that its initial brief addresses the issues raised by the Tribune's motion to dismiss which were the basis for the circuit court's order.

◼ A reviewing court's responsibility for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override considerations of waiver. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831.) Given the procedural posture of this controversy, and the interest in assuring legal uniformity and a fair outcome, the merits of the circuit court's order dismissing the

amended complaint as it pertains to JCAH must be considered.

Count III alleged, *inter alia,* that: the JCAH composed a false and libelous letter or spoke false and slanderous words to the Tribune; and the false matter so communicated was that the Hospital had been refused accreditation. On appeal, the JCAH incorporates into its brief all arguments and defenses advanced in the Tribune's brief. Illinois law no longer recognizes any substantive differences between libel and slander. (*American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 629, 435 N.E.2d 1297; *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 159, 221 N.E.2d 516.) The additional allegation of slander against JCAH, therefore, is not material. Since the substance of the alleged JCAH communication was the same as that published by the Tribune, the principles set forth in part II of this opinion compel a similar result as to count III.

For the given reasons, the judgment of the circuit court is affirmed in part, vacated in part and remanded with directions to consider the amended complaint as to all defendants under the rule of construction enunciated in *Chapski v. Copley Press.*

Affirmed in part, vacated in part and remanded.

DOWNING, P.J., and STAMOS, J., concur.