**ACTION REPAIR, INC.,**
**Plaintiff-Appellant,**

v.

**AMERICAN BROADCASTING COMPA-NIES, INC., d/b/a WLS–TV,**
**Defendant-Appellee.**

**No. 84–2929.**

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1985.

Decided Oct. 28, 1985.

As Corrected Oct. 29, 1985.

Richard D. Harris, Dick & Harris, Chicago, Ill., for plaintiff-appellant.

Linda L. Listrom, Jenner & Block, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

This is an appeal of a Civil Rule 12(b)(6) dismissal of a defamation action. The facts are relatively simple. Plaintiff, Action Repair, Inc. (Action Repair), repairs appliances. On September 16, 1983, WLS–TV (WLS), a Chicago-based affiliate of defendant American Broadcasting Companies, Inc., broadcast a consumer report on appliance repair companies which criticized Action Repair. Action Repair claims statements in the broadcast were false and de-

* The Honorable William J. Campbell, United States Senior District Judge for the Northern District of Illinois, is sitting by designation.

famatory. On January 12, 1984 Action Repair filed a complaint in the United States District Court for the Northern District of Illinois citing diversity jurisdiction pursuant to 28 U.S.C. 1332(a) and (c). The complaint contained two counts. One count alleged violation of the Illinois Consumer Fraud Act (Ill.Rev.Stat., ch. 121½ § 262, et seq.) and the Illinois Deceptive Trade Practices Act (Ill.Rev.Stat., ch. 121½ § 311, et seq.). This count was dismissed voluntarily by Action Repair. The remaining and sole count we are concerned with on this appeal alleges *per se* defamation of Action Repair's business, claiming the WLS–TV broadcast falsely accused Action Repair of negligently repairing refrigeration equipment, overcharging customers, failing to respond to customer calls and defrauding customers through its advertising. District Judge Susan Getzendanner dismissed this count at the Rule 12(b)(6) stage for two reasons: first, because even considered as a *per quod* defamation count it failed to plead special damages adequately; and secondly, because the natural and obvious meaning of the allegedly libelous statements were reasonably capable of an innocent interpretation, the statements did not constitute libel *per se.* Action Repair appeals the Rule 12(b)(6) dismissal. For the reasons set forth below, we reverse.

■ The current Illinois standard employed in examining statements alleged to be defamatory is set forth in *Chapski v. Copley*, 92 Ill.2d 344, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982):

"We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; *if,* as so construed, *the statement may reasonably be innocently interpreted* or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.* This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to

the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff." *Id.* 65 Ill.Dec. at 888, 442 N.E.2d at 199. [Emphasis supplied.]

The current rule is known as the "reasonable innocent construction rule." It should be differentiated from the old "innocent construction rule." The old rule required:

"... that words allegedly libelous that are *capable* of being read innocently *must* be so read and declared nonactionable as a matter of law." See *John v. Tribune Co.,* 24 Ill.2d 437, 181 N.E.2d 105, 108 (1962) [Emphasis supplied.]

■ The old innocent-construction rule was favored because its stiff requirement in order to find a statement libelous was deemed to protect free speech, free press and "the robust discussion of daily affairs." See *Dauw v. Field Enterprises, Inc.,* 78 Ill.App.3d 67, 33 Ill.Dec. 708, 711, 397 N.E.2d 41, 44 (1979). However, over time the old rule created harsh and often unjust results. The *Chapski* court lamented about the old rule that:

"... [c]ourts generally strain to find unnatural but possibly innocent meanings of words where such a construction is clearly unreasonable and a defamatory meaning is far more probable." *Chapski,* supra, 65 Ill.Dec. at 887, 442 N.E.2d at 198.

A preliminary determination of whether the statements are actionable is a question of law. See *Chapski,* 92 Ill.2d at 350, 65 Ill.Dec. 884, 442 N.E.2d 195; *American Int'l Hosp. v. Chicago Tribune Co.,* 120 Ill.App.3d 435, 441, 76 Ill.Dec. 505, 458 N.E.2d 1305 (1983). Today's legal standard under *Chapski* requires a statement be analyzed with the words and implications given their natural and obvious meaning in as much of a current day context as possible. Implicit in the *Chapski* test is a balancing of the publisher's right to publish and be protected by First Amendment guarantees versus an individual's or business's right to vindicate their good name and reputation. See *Chapski,* 92 Ill.2d at 351–352, 65 Ill.

Dec. 884, 442 N.E.2d 195; *American Int'l Hosp. v. Chicago Tribune Co.*, 120 Ill. App.3d 435, 442, 76 Ill.Dec. 505, 458 N.E.2d 1305 (1983).

 For words to be considered libelous *per se* in situations found in the case *sub judice,* they must discredit the people in the business by "... imput[ing] ... inability to perform or *want of integrity* in the discharge of duties of office or employment ... prejudic[ing] a person in his profession or trade." [Emphasis supplied.] See *Brown & Williamson Tobacco Corp. v. Jackson,* 713 F.2d 262, 268 (7th Cir.1983); *American Pet Motels' Inc. v. Chicago Veterinary Medical Association,* 106 Ill. App.3d 626, 62 Ill.Dec. 325, 435 N.E.2d 1297, 1300 (1982). Of course, "... a defense of fair comment must be afforded for honest expression of opinion based upon privileged, as well as true, statements of fact." See *New York Times Co. v. Sullivan,* 376 U.S. 254, 292 n. 30, 84 S.Ct. 710, 732 n. 30, 11 L.Ed.2d 686.

Finally, this case necessarily addresses the issue of when it is appropriate to grant a Rule 12(b)(6) motion to dismiss in libel cases. The standard to be employed here comes from the landmark case of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), in which it was said, "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 101–102. The district court properly commented that all pleaded facts are to be accepted as true.

 Having reviewed the legal criteria surrounding this case we move to an analysis of the statements alleged as defamatory. A few of the statements broadcast by WLS are true and thus not defamatory and can be dismissed summarily. See *Sivulich v. Howard Publications, Inc.,* 126 Ill.App.3d 129, 132, 81 Ill.Dec. 416, 466 N.E.2d 1218 (1984) (statement that plaintiff was charged with battery true when civil battery suit was filed); *Antonelli v. Field Enterprises, Inc.,* 115 Ill.App.3d 432, 435, 71 Ill.Dec. 188, 450 N.E.2d 876 (1983) (statements that plaintiff was "mobster" true when plaintiff had been convicted of numerous crimes). Specifically, the statements that Action Repair was unwilling to talk to the media and that it canceled interviews with the media twice are not defamatory. They are true facts. It appears Action Repair voluntarily decided not to be interviewed for whatever reason. Nothing in the record suggests Action Repair was denied an opportunity to be interviewed by WLS. This fact may be reported. Likewise, the reporter's statement that it would take him ten days to get his refrigerator fixed and that Action Repair's "Yellow Pages" advertisement is the largest ad in the book are more apparent truisms which are reportable. If Action Repair does not like the negative connotation behind the ten-day wait for repairs, then let it as a business do something about it. Action Repair has no right to a favorable review in this instance. If reporting a ten-day wait for service is bad for business, Action Repair must fix the problem, not claim that such a fact has no right to be reported. Further, if the reporting of the large ad in the Yellow Pages did not mix well with the ten-day wait, so be it. The answer is for Action Repair to pay more for personnel— or pay less for the ad. Finally, the reporter's statement that Action Repair "has our money and has shut us out" refers to the fact that Action Repair refused to talk with WLS despite WLS's desire to inquire into the repair services of the company. We see nothing potentially defamatory here.

 There are other statements from the broadcast which can be dismissed as honest expressions of opinion. Expressions of opinion are protected by the First Amendment, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–340, 94 S.Ct. 2997, 3006, 3007, 41 L.Ed.2d 789 and thus are not actionable. Statements of opinion may also fall under the Illinois common law privilege of fair comment and criticism. This doctrine protects opinions in the public interest

that fairly depict the acts of an individual. *Farnsworth v. Tribune Co.*, 43 Ill.2d 286, 253 N.E.2d 408 (1969). The WLS reporter's statement that individuals should heed the caution "Buyer Beware" when considering dealing with Action Repair constitutes honest opinion. To rule otherwise would be to rule reporters are not allowed to comment even in the most elementary manner. Additionally, the statement that many people are choosing the wrong repair company when choosing Action Repair is also opinion. It may be unfavorable opinion but it is opinion protected by the First Amendment. Reporters must be given some breathing space and be allowed to reach personal conclusions. Further, Action Repair claims WLS withheld relevant information from two of its customers before it interviewed them, resulting in an unfavorable rating of its services. This allegation is unsubstantiated. From the record before us the customer statements constitute fair comment. The grounds for finding WLS liable for these comments are non-existent.

Other WLS statements become more debatable. In *Naked City, Inc. v. Chicago Sun-Times*, 77 Ill.App.3d 188, 32 Ill.Dec. 661, 395 N.E.2d 1042 (1979), it was stated "... false statements of fact receive no protection ..." 77 Ill.App.3d at 190–191, 32 Ill.Dec. 661, 395 N.E.2d 1042. But in *Erickson v. Aetna Life & Casualty Co.*, 127 Ill.App.3d 753, 759–760, 83 Ill.Dec. 72, 469 N.Ed.2d 679 (1984), the court focused on the false origin of the potentially libelous statements. There the defendant prepared a phony report that it claimed came from a professional chiropractic review committee. The contents of the report were held to be libelous *per se* due to the context in which they were presented, *viz.*, a false report. *Id.* at 759–760, 83 Ill.Dec. 72, 469 N.E.2d 679.

 WLS reported:

"... we spoke to Judge Rissman this morning. He's in charge of Pro Se Court, he says they've (a customer of Action Repair) got a good case."

Action Repair claims that this statement was fabricated and that the conversation never took place. The district court claims the statement was merely "one person's opinion about the merits of a single lawsuit" and therefore protected by the First Amendment (D.Ct. Opinion P. 12). Yet if the statement was never made as appellant alleges, is it still to be considered an opinion? Additionally, we disagree with the district court about the potential weight the public could give to such an opinion. A statement coming from a judge, the "ultimate expert," is not, as the district court claims, just one person's opinion to be compared to a statement of forty people. Such statements from a state court jurist can be more prejudicial when aired than similar speculation from multitudes of anonymous lay people. The statement, if made by Judge Rissman and if erroneous, is potentially defamatory in that a judge in essence confirms that Action Repair is unable to perform competently in its business activities. Plaintiff here claims the statement was never made. Such an allegation should not be dismissed on the pleadings. The more appropriate action for the district court to have taken would have been to proceed beyond the pleadings and secure an affidavit or some other documentation affirming that the Illinois judge made such a statement. If the judge never made the statement, as alleged by Action Repair, it was easily susceptible of a defamatory meaning and actionable. If the statement was made, depending on its accuracy or the context in which it was reported, it is potentially defamatory. It must be remembered that at the Rule 12(b)(6) stage all parties agree doubts must be resolved in favor of plaintiff and facts looked at in a light most favorable to plaintiff. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. If the statement is potentially defamatory to the extent it is not reasonably interpretable as innocent, *Chapski* requires the statement be presented to a jury to determine if the statement was in fact understood in a defamatory manner. We believe the district court's dismissal of the Judge Rissman statement at the pleading

stage on the ground that it was just one person's opinion was premature. Of course, if the statement was made and proved to be a valid assessment of the customer's case against Action Repair, it would not be actionable.

■■■ WLS also interviewed a Mr. Baumhart of the Better Business Bureau (BBB) who claims at one point in the broadcast the number of complaints he had received about Action Repair in the last two years numbered about forty. Action Repair alleged the number of complaints reported was false and inflated. The district court concluded:

"Interpreting the allegations favorably to Action Repair, ABC's false statement on the number of complaints filed overstates the true number. In light of the Illinois law cited above notwithstanding that the number of complaints reported as filed is higher than the number actually filed, the court finds that the statement that 40 complaints were filed in two years may be innocently interpreted ... one may reasonably interpret the filing of complaints as innocent—they may be without merit or may not strictly relate to the conduct of Action Repair's business." D.Ct.Op. Pg. 10.

We disagree with this analysis. It is a strained interpretation along the lines of the old innocent construction rule ("if the statement is *capable* of being read innocently it *must* be so read"). Using the *Chapski* reasonable innocent construction rule, we do not believe the above misstatement as to the number of complaints filed "may reasonably be innocently interpreted." No matter what the size of the company, when the average lay person (who may need an appliance fixed immediately) hears on a consumer report that a particular repair company has forty complaints filed against it with a reputable organization like the BBB, the natural and obvious response of that lay person is to take his appliance repair business elsewhere. His "gut" feeling would not be that the complaints were probably baseless. Considering the fact that the district court admits

the number of complaints reported to have been filed is probably inaccurate, a potentially defamatory meaning should have been the assessment. The next step according to *Chapski* is for a jury to decide if the publication was understood to be defamatory.

The pleadings also reveal a dispute as to whether Action Repair ever responded to complaints filed with the BBB. Action Repair claims allegations it never responded to these complaints were false. The answer, which could be ascertained through simple discovery techniques, should be found before the case is dismissed. The statement infers a lack of integrity on the part of Action Repair toward its customers. If false, the statement is reasonably susceptible of a defamatory meaning. See *Brown & Williamson Tobacco Corp., supra*. Action Repair would have a right to have a jury consider its impact, if any. The district court failed to ascertain whether Action Repair responded to the complaints or not but instead stated, "In any case ... the failure to respond may be reasonably innocently interpreted. A company may choose to deal directly with its dissatisfied customers ... one may reasonably conclude that the complaints had no merit," (D.Ct.Op. P. 11). We disagree and suggest the "natural and obvious" implication from the statement is that Action Repair's service is either dishonest or incompetent and that once a customer is injured by Action Repair even the BBB probably cannot cure the damage. We need not debate which interpretation is more reasonable but rather recognize there are certainly permissible interpretations of the alleged defamatory statements which, according to the liberal Rule 12(b)(6) criteria, should have precedence.

■■■ Action Repair also claims WLS falsely reported it was being investigated by the Attorney General's office. Whether this is so was never ascertained by the district court even though the answer could have been determined through routine discovery. Instead the district court summarily concluded:

"Even if the latter statement relating to investigation by the Attorney General is interpreted as applying to plaintiff, the court would not consider it libel per se. The fact of being investigated is insufficient to impute criminal activity, fraud, or bad business methods against Action Repair. In addition the statement may reasonably be interpreted innocently as not assailing Action Repair's business methods. Investigations may center on a wide range of corporate acts or omissions."

We disagree with the district court's conclusion that the references to an Attorney General's Office investigation are incapable of reaching libel proportions. As *Chapski* instructs us, the statements must be read in context. After announcing Action Repair was being investigated by the Attorney General, WLS later in the broadcast stated, "You know once they've gotten our money they've shut us out, they won't answer your complaints and they won't respond to us or the BBB, I guess they're going to have to do their talking to the Attorney General's Office." This statement surely cannot be reasonably interpreted innocently at not assailing Action Repair's business methods. In *Crinkley v. Dow Jones & Co.*, 119 Ill.App.3d 147, 74 Ill.Dec. 636, 456 N.E.2d 138 (1983), defendant provided statements to a newspaper to the effect that an executive of its company had resigned after disclosures of payments to foreign governments. The court held the statements to be libelous *per se* because given the context of the article, which discussed payoffs, bribes and grand jury indictments, they could not be interpreted as innocent. *Id.* at 151–152, 74 Ill. Dec. 636, 456 N.E.2d 138.

The statement about the Illinois Attorney General carries a potentially defamatory meaning, especially if false as is alleged. The more reasonable inference from the statement is that Action Repair was systematically avoiding inquiries about questionable business practices but ultimately would have to answer some tough questions posed by the Attorney General. Once again, it appears that under the spirit of the *Chapski* law, the statement, especially if false, is capable of defamatory meaning and should not be dismissed as subject to a reasonable innocent interpretation as a matter of law. Therefore, under *Chapski* and *Conley v. Gibson, supra,* a Rule 12(b)(6) dismissal is inappropriate.

Whether words alleged as defamatory may be reasonably innocently interpreted according to their natural and obvious meaning under *Chapski* is necessarily a judgment call by the court, just as whether the words were in fact understood in a defamatory manner is necessarily a judgment call for the jury. With libel allegations, such judgment calls are usually hotly debated. Judging how the public would interpret nebulous verbiage is difficult. Therefore, doubts as to whether a statement has a potentially defamatory meaning should not be resolved in favor of the moving party at the Rule 12(b)(6) stage. Dismissal at the summary judgment stage, after more information can be obtained about the origin and context of the statements, is more appropriate. At the Rule 12(b)(6) stage, courts should not make "judgment calls" about the defamatory capacity of allegedly libelous statements at issue because information on the pleadings alone is rarely sufficient. While we share the district court's desire to dismiss meritless suits in order to reduce its burdensome caseload, in the libel arena, where subjective interpretations of the defamatory capacity of allegedly libelous statements are involved, the gathering of relevant information through elementary discovery techniques is vital before dismissal.

Finally, the district court dismissed Action Repair's complaint because it failed to plead special damages as required for *per quod* defamation. The special damage allegations found in paragraph 18 of Action Repair's complaint state that it suffered losses in excess of $1,000,000. This does not constitute a sufficient statement of special damages for purposes of Fed.R.Civ.P. 9(g). Rule 9(g) mandates "[w]hen items of special damages are claimed, they shall be

specifically stated." Although an estimation of final total dollar amounts lost is unnecessary (see *Brown and Williamson Tobacco Corp. v. Jackson,* 713 F.2d 262, 270 (7th Cir.1983)), the pleadings must demonstrate some actual pecuniary loss. *Grzelak v. Calumet Pub. Co.,* 543 F.2d 579, 581–582 (7th Cir.1975). Thus in *Continental Nut Co. v. Robert L. Berner Co.,* 345 F.2d 395 (7th Cir.1965), specific figures of gross sales before and after the alleged defamatory publication were considered sufficient. And in *Fleck Bros. v. Sullivan,* 385 F.2d 223 (7th Cir.1967), plaintiff's mere allegation that the libel caused him to make an expenditure of money was considered satisfactory because it notified defendant of plaintiff's claim that it had suffered monetary loss as a result of defendant's conduct. However, the plaintiff in *Paul v. Premier Elec. Const. Co.,* 581 F.Supp. 721 (N.D.Ill.1984), made similar allegations of damage to Action Repair's, claiming that its good name, reputation and business had been injured in excess of $12,500,000. The court held that statement to be insufficient since the complaint alleged no basis for the figure, no connection between the defamatory statement and the damage, and did not specify the nature of the damage. *Id.* at 724.

Here, Action Repair could allege, for example, some "before and after the broadcast" figures or some expenditure incurred as a result of the broadcast. There is no "hard and fast formula" in this area (see *Spelson v. CBS, Inc.,* 581 F.Supp. 1195, 1201 (N.D.Ill.1984)). Nevertheless, the district court properly held that Action Repair's blanket statement of losses in excess of $1,000,000 for a *per quod* defamation needs further elaboration through filing an amended complaint. See also *Spelson,* 581 F.Supp. at 1206; *Barton v. Barnett,* 226 F.Supp. 375 (N.D.Mass.1964).

This cause is reversed and remanded to the district court. If it deems summary judgment is appropriate, it must supply further factual findings concerning the alleged defamatory statements after some exploratory discovery. Action Repair is to be allowed an opportunity to amend its complaint as to special damages. Circuit Rule 18 is to be applied.

So Ordered.