THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROGER HAWKINS, Defendant-Appellant.

Second District    No. 2—86—0409

Opinion filed December 10, 1987.—Rehearing denied January 8, 1988.

WOODWARD, J., dissenting.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and David A. Bernhard, both of the State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

On February 13, 1985, defendant, Roger Hawkins, entered a negotiated plea of guilty to aggravated battery and, pursuant to the plea agreement, was sentenced to probation for 30 months. No appeal was taken from this judgment of conviction. On October 22, 1985, a petition to vacate probation was filed. Following a hearing, defendant was found in violation of his probation. On April 17, 1986, his probation was revoked, and he was sentenced to a four-year term of imprisonment.

Defendant appeals from the April 17, 1986, order revoking his probation and sentencing him to imprisonment raising the single issue of whether he has been deprived of the effective assistance of counsel at the probation revocation proceedings where he was represented by the public defender's office, which had withdrawn as his counsel from the proceedings on his original conviction because of a conflict of interest perceived at that time.

We need recite only that part of the record relevant to the issue raised in this appeal. Defendant was charged with aggravated battery, and the Winnebago County public defender was appointed as his counsel. At defendant's initial appearance before the court, the assistant public defender filed a motion to withdraw as defendant's attorney explaining that a conflict of interest existed because, in another pending case against defendant, an employee of the public defender's office was the complaining witness and the office had withdrawn from that case. Without discussion, the motion was granted, and attorney Gordon Ring, who represented defendant in the other pending case, was appointed to represent him in the instant case. Eventually, on February 13, 1985, defendant entered a negotiated plea of guilty to aggravated battery and was sentenced to a 30-month term of probation. Among the conditions of probation was that he participate in psychological counseling. As part of the plea agreement, the pending misdemeanor charge, which the public defender's office had referred to earlier when claiming a conflict of interest, was dismissed.

On October 22, 1985, a petition to vacate probation was filed alleging that defendant violated the terms of his probation by wilfully failing to pay his fine and court costs and by failing to participate in psychological counseling as ordered. On October 30, 1985, the Winnebago County public defender was appointed to represent defendant and continued to represent defendant throughout the probation revocation proceedings. At no time in the proceedings below did defendant voice any objection to this representation. Following a hearing, he was found in violation of the terms of probation, and his probation was revoked. He was sentenced on April 17, 1986, to a four-year term of imprisonment on his original conviction for aggravated battery. Defendant now appeals from the April 17, 1986, order.

Defendant's sole issue presented on review is whether he was denied the effective assistance of counsel at the probation revocation proceedings when he was represented by the public defender's office, which had withdrawn as his counsel from the proceedings on the original conviction because of a conflict of interest. The conflict of interest asserted in the original proceeding was that an employee of the public

defender's office was the complaining witness against defendant in a misdemeanor case pending at the same time as the aggravated battery charge against him. Citing *People v. Lewis* (1981), 88 Ill. 2d 429, 430 N.E.2d 994, as setting forth the test for a *per se* conflict of interest of counsel which would without any showing of prejudice deprive a defendant of effective assistance of counsel, defendant contends that a *per se* conflict of interest existed when the public defender's office resumed its representation of him at the probation revocation proceedings after withdrawing as counsel, for the reason stated above, in the cause which led to his original conviction.

In *People v. Franklin* (1979), 75 Ill. 2d 173, 176, 387 N.E.2d 685, 686, our supreme court summarized the *per se* conflict of interest rule as follows:

> "This court has repeatedly stated that a defendant's fundamental right to effective assistance of counsel entitles the person represented to the undivided loyalty of counsel and prohibits a defense attorney from representing conflicting interests or undertaking the discharge of inconsistent obligations. [Citations.] In furtherance of this fundamental right, this court has adopted a *per se* rule which provides essentially that where defense counsel is involved in an actual or potential conflict of interest, it is unnecessary for the defendant to establish actual prejudice, as prejudice is presumed by law. [Citations.]"

In *People v. Lewis* (1981), 88 Ill. 2d 429, 430 N.E.2d 994, the court stated that "[o]nly in those instances where the conflict arose in counsel's *professional* relationships and obligations have the past decisions of this court dispensed with the requirement that prejudice be shown." (Emphasis added.) (88 Ill. 2d at 438, 430 N.E.2d at 999; see also *People v. Davis* (1983), 97 Ill. 2d 1, 15-16, 452 N.E.2d 525, 532.) As further held in *Lewis*, the extension of the *per se* rule to supposed conflicts arising from personal relationships which do not involve substantial emotional ties is not warranted. (*Lewis*, 88 Ill. 2d at 438, 430 N.E.2d at 999.) In *Lewis*, the court found no *per se* conflict of interest in counsel's work-based acquaintance with a former probation officer murdered in the course of a robbery for which defendant was charged. 88 Ill. 2d at 436, 430 N.E.2d at 998.

▮▮ The instant case does not involve a conflict in the public defender's office's professional commitments, nor is there any showing of a substantial emotional tie of the office to the complaining witness in the prior, unrelated case. Consequently, the *per se* rule is inapplicable under the circumstances here.

While the public defender's office, on its own, deemed it a conflict

of interest to represent defendant in the original proceeding while another misdemeanor case against him was pending in which an employee of that office was the complaining witness, at the time of the initiation of the separate probation revocation proceedings, some eight months had elapsed since the dismissal of the misdemeanor case. There is no indication that the fact that an employee in the public defender's office was once the complaining witness in the prior, unrelated misdemeanor case, which was disposed of prior to the probation revocation proceeding at hand, was a strong emotional involvement of a personal nature which might affect the public defender's office in its representation of defendant in this proceeding. It should not be presumed that attorneys are unable to judge whether they can subordinate personal feelings to professional duty. (*People v. Lewis* (1981), 88 Ill. 2d 429, 440, 430 N.E.2d 994, 999-1000.) Although the public defender's office felt it advisable to withdraw from its representation of defendant in the original proceeding while another case was pending against him involving an employee of its office, we hold that this situation does not create a *per se* conflict of interest by representation of defendant in a future, separate probation revocation proceeding unrelated to the previously dismissed case involving its employee.

As defendant has argued only a *per se* conflict and has not claimed prejudice from this representation to justify reversal, we affirm the judgment of the circuit court of Winnebago County for the reasons stated above.

■■ The dissent raises *sua sponte* the issue of whether the trial court's finding that defendant violated the terms of his probation which required that he participate in psychological counseling was contrary to the manifest weight of the evidence. While the general rule is that, where a question is not raised or reserved in the trial court or, though raised in the lower court, it is not urged or argued on appeal, as is the case here, it will not be considered and will be deemed to have been waived, we recognize that this is a rule of administration and not of jurisdiction, and it will not operate to deprive an accused of his constitutional right of due process. (See *People v. Burson* (1957), 11 Ill. 2d 360, 370-71, 143 N.E.2d 239, 245; *People v. Torres* (1977), 47 Ill. App. 3d 101, 105-06, 361 N.E.2d 803, 807.) Other than for jurisdictional reasons, however, a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment. *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664, 667.

After a thorough review of the record, we are not persuaded that the trial court's finding that defendant violated the terms of his proba-

tion was contrary to the manifest weight of the evidence or that defendant was otherwise deprived of his constitutional right to due process in the probation revocation proceedings. There was ample credible evidence that, while on probation, defendant missed approximately 11 counseling sessions, some of which defendant admitted he failed to attend because he was frustrated or due to other circumstances. He did not testify that he was under any mental disorder during those times which prevented his attendance, as is suggested in the dissent. In fact, the evidence shows that defendant's acute psychotic episodes occurred before he was placed on probation and subsequent to his probation revocation hearing when he refused to take his medication. Accordingly, there is no basis for *sua sponte* raising this issue.

Affirmed.

UNVERZAGT, J., concurs.

JUSTICE WOODARD, dissenting:

I respectfully dissent on the basis that defendant did not have the requisite mental capacity to violate his probation and that the probation revocation violated defendant's constitutional right as guaranteed by the eighth amendment. This court should address these issues in this case even though they were not raised on appeal.

Rule 366 of the Illinois Supreme Court Rules provides in pertinent part:

> "In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,
>
> * * *
>
> (5) enter any judgment and make any order that ought to have been given or made * * *." (107 Ill. 2d R. 366.)

Similarly, Supreme Court Rule 615 provides with respect to criminal cases:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 107 Ill. 2d R. 615.

Our supreme court in *Hux v. Raben* (1967), 38 Ill. 2d 223, found that "[t]hese provisions recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary [nature] of our system." 38 Ill. 2d at 225; *American International Hospital v. Chicago Tribune Co.* (1983), 120 Ill. App. 3d 435.

It is well established that probation may be revoked upon showing a violation of the terms of probation by a preponderance of the evidence and that the determination by the trial court will be reversed only when it is contrary to the manifest weight of the evidence. *People v. Owens* (1983), 116 Ill. App. 3d 51.

At the revocation hearing held on November 1, 1985, the State charged that defendant had not complied with the rules of probation, *i.e.*, he failed to participate in psychological counseling and to take psychotropic medication on a continuing basis. Defendant's probation officer, Arnold Hawkinson, testified first. Hawkinson stated that he had been defendant's probation officer for 2½ months and that he told defendant he must attend counseling sessions and take his medication. On cross-examination, Hawkinson stated that he never told defendant what would occur if he failed to comply with those conditions of probation relating to psychological counseling and taking medication.

Next to testify for the State was Leon Black (Black), a clinical therapist at the Janet Wattles Mental Health Center. Black stated that he first met defendant on September 20, 1985, for purposes of counseling defendant. Defendant was required to attend 30-minute counseling sessions once every two weeks. Black testified that out of 12 scheduled appointments, defendant missed approximately 11. He also testified that defendant was scheduled to pick up his medication every two weeks and failed to do so 10 to 11 times. On cross-examination, Black said that defendant called him in September 1985 to schedule an appointment "because he [defendant] had some things on his mind, people were out to get him, they were doing things to him." Further, Black admitted that he was not testifying from his personal knowledge when he stated that defendant had failed both to attend 11 counseling sessions and to pick up his medication on 11 occasions. He had studied agency records to determine defendant's compliance with the conditions of probation. Defendant's attorney moved to strike the testimony concerning medication and appointments as inadmissible hearsay. The court overruled this objection.

On cross-examination, Black further testified that defendant was a paranoid schizophrenic, and he described this mental disorder thusly: "That means a person that has difficulty living in society, difficulty with his judgment, reasoning, and cognitive ability." Black also testified as follows regarding the difficulty paranoid schizophrenics have in cooperating with the treatment of their mental disorder:

"Q. [by Public Defender] Is it not unusual for people suffering from that disability to miss appointments with your facility?

A. Is it at all usual?

Q. Yes.

A. No, it is not that unusual.

Q. And it is common for people with that disability to often-times not take medication, is that correct?

A. That's correct.

Q. And their failure to take medication and sometimes their failure to keep appointments, is often a result of their illness or disability, is that also correct?

A. That could be possible.

Q. In Roger's [defendant Hawkins] case, could that be possible?

A. That could be possible."

Defendant testified that he had missed some appointments "because of the weather, or different circumstances, or other people, frustration." Also, he admitted that he had missed three or four counseling appointments and medication pickups. The court questioned defendant about going to the Janet Wattles Mental Health Center:

"THE COURT: How did you get out there?

THE WITNESS: Walk.

THE COURT: Where did you walk from?

THE WITNESS: I have walked from the Grand Hotel.

THE COURT: The Grand Hotel is where?

THE WITNESS: On Broadway—Broadway and 8th Street. *By the time I got there, I was really mad, upset, frustrated,* so I just—on different occasions, I just said to hell with it—excuse my language. *Just stayed in bed and became very frustrated.*

THE COURT: You may step down.

THE WITNESS: That's ridiculous." (Emphasis added.)

At other points in his testimony, defendant exhibited unstable thought patterns to which the court responded. The following excerpt is taken from defendant's direct examination.

"Q. [by Public Defender] Did you go there (the mental health center) on occasions and talk to people?

A. I sure did.

Q. You remember how many times you went there and talked to people?

A. Sometimes I got the impression—

THE COURT (Interposing): Wait a minute.

THE WITNESS: When people would ask me why do you go there—

THE COURT (Interposing): No. Will you do something for me?

THE WITNESS: Yes, sir.

THE COURT: I want you to listen to the question. Then if you have to think a minute, you think. Then I want you to answer that question and then stop without giving reasons for or explaining or anything.

And if your lawyer wants to explain it, he will ask you further questions getting to explain what you are talking about.

But first of all, just listen to the question, and answer that question, and stop."

The issue in this particular probation revocation hearing was not only whether defendant had missed the counseling sessions and medication pickups but whether during his probation he had the requisite state of mind to intentionally or knowingly violate the conditions of his probation. In a case such as this where the defendant has a long history of serious mental illness, the State should demonstrate that the defendant's disorder has not precluded his capacity to comply with the probation rules.

Here there was no evidence presented by the State as to defendant's mental condition between February 13, 1985, and October 30, 1985. The State only presented evidence pertaining to defendant's failure to attend counseling sessions and pick up his medication, which, under these circumstances, should not be sufficient to meet its burden of proving by a preponderance of the evidence that defendant knowingly violated the terms of his probation.

The record includes substantial circumstantial evidence regarding defendant's mental condition before and after the hearing at which probation was ordered. Initially, we note that defendant had been discharged from Singer Mental Health Center on November 28, 1975, September 5, 1978, January 29, 1982, December 14, 1983, and March 24, 1984. The defendant was originally charged with aggravated battery on September 17, 1984; on November 2, 1984, after a hearing, he was found unfit to stand trial. At least three clinicians, including one of the State's two witnesses at the probation violation hearing, diagnosed defendant as a paranoid schizophrenic.

Of great significance is testimony of the State's principal witness, Leon Black, previously set forth. He stated that it was not unusual for paranoid schizophrenics to miss their appointments at the mental health center. He further stated it was common for paranoid schizophrenics to fail to take their medication. Black said that defendant's failures to keep counseling and medication appointments were possibly the result of his particular type of mental illness.

Defendant's testimony quoted above at the hearing on November

1, 1985, reflected an unstable mental condition. This was borne out by the fact on February 21, 1986, the defendant was found to be unfit to be sentenced and required psychiatric hospitalization.

It is apparent that, following the February 13, 1985, order of probation, defendant lapsed into an acute paranoid schizophrenic state. This acute psychosis prevented him from complying with the conditions of his probation, specifically, attending counseling and taking medication.

The majority finds it significant that defendant did not testify that he was suffering from any mental disorder which prevented his attendance at the mental health center. It would not be typical for a paranoid schizophrenic, who projects his psychosis onto the environment around him, to even be aware of his mental illness. "Not only does the (paranoid) patient claim that others accuse him of the traits that he himself does not like in himself, but he eventually ascribes to others the characteristics he cannot accept in himself. Whereas, he started by being suspicious, he soon becomes sure that other people plot or conspire against him." (S. Arieti, *Interpretation of Schizophrenia* (1974).) Here, as noted above, the defendant stated at the revocation hearing that he had missed appointments "because of weather, or different circumstances, or *other people, frustration.*" (Emphasis added.) In effect, these are the ways by which a paranoid schizophrenic would describe the outward manifestations of his illness, specifically, the reference to "other people" and "frustrations."

Further, the majority finds that defendant's acute psychotic episodes occurred before he was placed on probation and subsequent to his probation revocation hearing. A close reading of the record indicates that defendant was left to his own devices following his being put on probation and was slowly degenerating into an acute paranoid schizophrenic state, which in turn prevented him from complying with his probation rules. The record shows that no concentrated attempt was made to contact the defendant and point out the importance of his compliance with the conditions specified when he was placed on probation. (See, *e.g.,* R. Suinn, *Fundamentals of Behavior Pathology* 433 (1975) (paranoid schizophrenics experience a major disturbance in their functioning and are unable to carry on for long without treatment).) The aforementioned testimony of Leon Black relating a September 1985 phone conversation with defendant clearly demonstrates his deteriorating condition in the month prior to the probation revocation hearing. It is evident that at that time, when defendant was allegedly violating his probation, he was exhibiting classic paranoid thinking, *i.e.,* people were out to "get him" and were "doing things" to him, yet

there is no evidence that the proper authorities endeavored to explain to defendant and impress upon him the importance of complying with the terms of probation.

On October 22, 1985, a petition was filed to revoke defendant's probation. At a presentence hearing held on December 18, 1985, the trial court noted three alternate dispositions, namely, continued probation, the penitentiary, or inpatient hospitalization. Thereupon the matter was continued to February 2, 1986, at which hearing defendant was found unfit for sentencing. Subsequently, on April 17, 1986, defendant was sentenced to the Department of Corrections for four years.

Regarding the second issue that should be addressed here, the eighth amendment to the United States Constitution bans cruel and unusual punishment and is applicable to the States through the due process clause of the fourteenth amendment. (*Robinson v. California* (1962), 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417.) In *Robinson* the defendant was convicted of the criminal offense of being addicted to the use of narcotics. Police had picked up Robinson and found scar tissue discoloration and what appeared to be numerous needle marks on his arm. The defendant was convicted under a criminal statute which made it an offense to be a narcotics addict.

In analyzing the case, the Supreme Court acknowledged that the State had broad power in regulating narcotic drug traffic within its borders. The court found that the statute was not one which punished a person for the use of narcotics, for their purchase, sale, possession, or the disorderly behavior that resulted from their use. Instead the statute made the *status* of narcotic addiction a criminal offense for which a person can be prosecuted "at any time before he reforms." *Robinson*, 370 U.S. at 666, 8 L. Ed. 2d at 762-63, 82 S. Ct. at 1420.

The court stated:

> "It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be *mentally ill*, or a leper, or to be afflicted with a venereal disease. A State might determine that the general health and welfare require that the victims of these and other human afflictions be dealt with by compulsory treatment, involving quarantine, confinement, or sequestration. But, in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." (Emphasis added.) *Robinson*, 370 U.S. at 666, 8 L. Ed. 2d at 763, 82 S. Ct. at 1420.

In that case, the State acknowledged that narcotic addiction was an illness; the court noted that addiction was apparently an illness which may be contracted innocently or involuntarily. The court held that a State law which imprisons a person thus afflicted as a criminal inflicts a cruel and unusual punishment in violation of the eighth amendment.

In his concurring opinion, Justice Douglas made more explicit why it is cruel and unusual punishment to treat a narcotic addict as a criminal. He concluded his concurrence as follows:

"This prosecution has no relationship to the curing of an illness. Indeed it cannot, for the prosecution is aimed at penalizing an illness, rather than at providing medical care for it. We would forget the teachings of the Eighth Amendment if we allowed sickness to be made a crime and permitted sick people to be punished for being sick. This age of enlightenment cannot tolerate such barbarous action." *Robinson*, 370 U.S. at 677-78, 8 L. Ed. 2d at 768-69, 82 S. Ct. at 1425-26.

While the instant case does not deal with a criminal statute, it does involve the punishment of a person with a mental illness. As stated above, there is significant circumstantial evidence regarding the serious mental problems experienced by defendant prior to and throughout these criminal proceedings.

There is little doubt that defendant was unable to comply with the counseling and medication terms of his probation because of his mental illness. His phone call to his counselor in September 1985 attested to his paranoid schizophrenia, an illness that impeded and obstructed his capacity to avail himself of the court-ordered professional help. As a result, defendant has been punished for his sickness, *i.e.*, his *status* as a paranoid schizophrenic. Under *Robinson*, this is a clear violation of the proscription of the eighth amendment against cruel and unusual punishment.

This case should be remanded to the trial court for an order vacating defendant's probation revocation and for further proceedings to determine defendant's present mental condition and, in cooperation with the Illinois Department of Mental Health and Developmental Disabilities, to fashion terms of probation that appropriately address defendant's psychiatric needs.