UNITED STATES of America, Plaintiff,

v.

**CONSERVATION CHEMICAL COMPA-
NY OF ILLINOIS; and Norman B.
Hjersted, Defendants.**

Civil No. H 86–9.

United States District Court,
N.D. Indiana,
Hammond Division.

April 23, 1987.

Andrew B. Baker, Asst. U.S. Atty., N.D. Indiana, William Sierks, USEPA, Washington, D.C., Jonathan McPhee, USEPA, Chicago, Ill., for plaintiff.

Louis M. Rundio, Jr., McDermott, Will & Emery, Chicago, Ill., Maureen Johns Grimmer, Eichhorn, Eichhorn & Link, Hammond, Ind., for defendants.

## ORDER

MOODY, District Judge.

This matter is before the court on a Motion to Dismiss filed by defendants Conservation Chemical Company of Illinois ("CCCI") and Norman B. Hjersted on January 5, 1987. Plaintiff United States Environmental Protection Agency (the "EPA") filed in opposition on January 13, 1987 and the defendants filed a reply brief on January 26, 1987. The EPA also filed a supplemental memorandum in support of its position on February 11, 1987 to which the

defendants responded on February 1, 1987.[1]

The EPA brought this action on January 6, 1986 against the defendants for alleged violations of the Resource Conservation and Recovery Act of 1976 ("RCRA" or the "Act"), codified as amended at 42 U.S.C. §§ 6901–6991. The defendants seek dismissal of certain claims on the grounds that: the claims for injunctive relief are moot; the EPA enforcement process should be stayed pending a state agency's procedure; the EPA has no authority to bring an action to enforce closure requirements; and, defendant Hjersted is not personally liable for any alleged violations.

### I.

### A. Statutory and Regulatory Guidelines [2]

In the closing days of the 94th Congress in late 1976, Congress passed the Resource and Recovery Act ("RCRA"), Pub.L. No. 94–580, 90 Stat. 2795 (1976) (codified as amended at 42 U.S.C. §§ 6901–6991). RCRA adopted a multifaceted approach to solid waste management. It mandates federal regulation of hazardous waste, strongly encourages solid waste planning by states, and funds resource recovery projects.

In particular, §§ 3001 through 3013 of RCRA, codified as amended at 42 U.S.C. § 6925(a), provide that "the Administrator shall promulgate regulations requiring each person owning or operating an existing (hazardous waste disposal) facility ... to have a permit issued pursuant to this section." Section 3004 of RCRA, codified as amended at 42 U.S.C. § 6924(a), requires that the Administrator "promulgate regulations establishing such performance standards, applicable to owners and operators of facilities for the treatment, storage, or disposal of hazardous wastes ... as may

be necessary to protect human health and the environment."

Recognizing that the EPA could not issue permits to all hazardous waste applicants before the effective date of RCRA, Congress provided that, under § 3005(e) of the Act, the Administrator promulgate regulations that allowed the owner or operator of a hazardous waste management facility that was in existence on November 19, 1980, to file a "Part A application," and to continue hazardous waste disposal pending the final administrative action on the facility's application. The Part A application calls for minimal information concerning the nature of the applicant's business, a description of the hazardous waste management processes it employs, a specification of the types of hazardous wastes processed, stored, or disposed of at the facility, as well as maps, drawings and photographs of the facility's past, present and future waste processing areas. *Id.* § 270.13. If the Administrator finds no reason to believe that the Part A application does not meet the disclosure requirements and once it has filed a Part A application and given proper notice of hazardous waste activities, an existing facility "shall have interim status and shall be treated as having been issued a permit." 42 U.S.C. § 6925(e); 40 C.F.R. § 270.70. The operation of a facility that has been granted interim status is limited to the types of wastes, as well as the processing, storage, and disposal procedures specified in the Part A application. Under 40 C.F.R. § 270.71, the facility must comply with the operating standards set forth at 40 C.F.R. Part 265. A facility's interim status terminates either upon final administrative disposition of a permit application, 40 C.F.R. § 270.73(a), or upon failure of the operator to furnish the full information required by the Part B application, as described below.[3]

---

**1.** An earlier motion to dismiss was filed by the defendants on February 5, 1986 and was fully briefed by the parties. However, because the grounds for the first motion to dismiss are included in the more recent filings, the court will consider the two motions together.

**2.** The following discussion of the statutory and regulatory scheme of RCRA is taken almost in

its entirety from *Northside Sanitary Landfill, Inc. v. Thomas*, 804 F.2d 371, 373–75 (7th Cir. 1986).

**3.** Under the 1984 amendments to the Act, a facility that had been granted interim status before November 8, 1984, shall have that status terminated on November 9, 1985, should the facility fail to apply for a final determination

Following the approval of a facility's Part A application and the grant of interim status, the facility must file a "Part B application" with the EPA. The Part B application calls for detailed information, including chemical and physical analyses of the hazardous waste treated at the facility, a description of procedures for preventing contamination of water supplies, a determination of the applicable seismic standard for the facility, a determination whether the facility is located within a flood plain, and data relating to groundwater monitoring. *Id.* § 270.14. The applicant must also furnish information concerning its use of hazardous waste containers, storage or disposal tanks, surface impoundments, waste piles, incinerators, land treatment facilities, and landfills. *Id.* §§ 270.15–270.21. Upon successful completion of both the Part A and Part B application, an owner is issued a hazardous waste permit, and is required to comply with the standards set forth in *id.* §§ 264.1–264.351 ("Part 264").

A facility that has been approved for interim status operation must prepare a written closure plan, a copy of which must be kept at the facility. *Id.* § 265.112. The purpose of the closure plan is to "protect human health and the environment, (to prevent) post-closure escape of hazardous waste, hazardous waste constituents, leachate, contaminated rainfall, to (protect against the escape) of waste decomposition products to the ground or surface waters or to the atmosphere." *Id.* § 265.111(b). Once closure has been ordered, the owner or operator of the facility must terminate operations in a manner that minimizes the need for further maintenance of the facility. *Id.* § 265.111(a).

A closure plan must "identify the steps necessary to completely or partially close the facility at any point during its intended operating life and to completely close the facility at the end of its intended operating life." *Id.* § 265.112(a). In addition, the closure plan must provide for post-closure care for a period of thirty years after the

facility is closed. *Id.* § 265.117(a). Post-closure measures include ground-water monitoring, maintenance of other monitoring and waste containment systems, and periodic reporting. *Id.* § 265.117. The plan may be amended as changes in the operation of the facility so dictate. *Id.* § 112(4)(b).

The owner or operator of a hazardous waste management facility must submit a closure plan to the appropriate EPA regional administrator at least 180 days before the date the facility is expected to begin closure. *Id.* § 112(4)(c). However, if the EPA has terminated the facility's interim status and has not issued a hazardous waste permit for the facility, the closure plan must be submitted to the EPA no later than fifteen days after interim status is terminated. *Id.* § 112(4)(c)(1). The public is provided an opportunity to comment on the submitted plan. *Id.* § 112(4)(d). The regional administrator must approve, modify, or disapprove the closure plan within ninety days of its receipt. The owner or operator of the facility is given sixty additional days to modify or prepare a new plan should the Regional Administrator have modified or rejected the original plan. *Id.* Whatever modification or revision the Regional Administrator then makes of the operator's revised plan shall become the approved closure plan. *Id.*

Section 3005(c) of the Act, codified as amended at 42 U.S.C. § 6925(c), provides that a state environmental agency, as authorized by the Administrator pursuant to 42 U.S.C. § 6947(a), is responsible for the issuance of hazardous waste management permits. Section 3006 of the Act, codified as amended at 42 U.S.C. § 6926, provides that a state may apply to the Administrator for authority to develop and enforce a hazardous waste program "in lieu of" a federal program and federal enforcement.

Despite this delegation to states, it appears that Congress intended for the EPA to retain ultimate authority over the provi-

regarding the issuance of a permit pursuant to 42 U.S.C. § 6925(c) (Part B application) before November 9, 1985, and to certify that it is in compliance with all applicable groundwater

monitoring and financial responsibility requirements. 42 U.S.C. § 6925(e)(2) (as amended by P.L. No. 98–616, 98 Stat. 3221).

sions of RCRA by empowering it with broad enforcement jurisdiction. Section 3008(a), codified as amended at 42 U.S.C. § 6928(a), authorizes the EPA to bring enforcement action to enjoin any violation of RCRA. This provision states:

(1) Except as provided in paragraph (2), whenever on the basis of any information the Administrator determines that any person has violated or is in violation of any requirement of this subchapter, the Administrator may issue an order assessing a civil penalty for any past or current violation, requiring compliance immediately or within a specified time period, or both, or the Administrator may commence a civil action in the United States district court in the district in which the violation occurred for appropriate relief, including a temporary or permanent injunction.

42 U.S.C. § 6928(a)(1).

The exception set forth in paragraph (2) concerns states like Indiana which have been authorized by the EPA to administer its own hazardous waste program. The only limitation placed upon the EPA in bringing an enforcement action in a RCRA-authorized state is that the EPA must first provide notice to that state. Section 3008(a)(2) provides:

(2) In the case of a violation of any requirement of this subchapter where such violation occurs in a State which is authorized to carry out a hazardous waste program under section 6926 of this title, the Administrator shall give notice to the State in which such violation has occurred prior to issuing an order or commencing a civil action under this section.

42 U.S.C. § 6928(a)(2).

C.F.R. §§ 271.1–271.137 ("Part 271") sets forth the requirements for authorizing state programs. Under these regulations, a state may obtain "interim authorization" in two "phases." Phase I tracks the regulations of 40 C.F.R. §§ 265.1–265.430 ("Part 265"), and authorizes the state agency to, among other things, conduct closure proceedings for interim status facilities. *See Id.* § 265.28. Once a state obtains

Phase I authorization, its regulations and procedures displace the federal interim status regulations. Phase II authorization allows the state to issue permits under standards corresponding to those found in Part 270, and to enforce standards corresponding to those found at Part 264.

Section 7006(b) of the Act, codified as amended at 42 U.S.C. § 6976(b), provides that "[r]eview of the Administrator's action ... in issuing, denying, modifying, or revoking any permit ... may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person.... Such review shall be in accordance with sections 701 through 706 of Title 5." If a party has been aggrieved by the action of an authorized state agency, review of the agency's decision shall be had in accordance with the applicable state regulations.

### B. Facts

In setting out the facts of this case, the court must be mindful of the present procedural posture; this matter is before the court on a motion to dismiss. Dismissal of a claim for relief is proper under Fed.R. Civ.P. 12(b)(6) only where it appears beyond a doubt that the plaintiff can prove no set of facts which would support that claim. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957); *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 735 (7th Cir. 1986); *Papapetropoulous v. Milwaukee Transport Services,* 795 F.2d 1299, 1303 (7th Cir.1986); *Action Repair, Inc. v. American Broadcasting Co.,* 776 F.2d 143, 146 (7th Cir.1985). For purposes of a motion to dismiss, the pleadings are to be construed liberally. *Strauss v. City of Chicago,* 760 F.2d 765, 776 (7th Cir.1985). Furthermore, the court must accept as true all material allegations of the complaint, *Wilson v. Harris Trust & Sav. Bank,* 777 F.2d 1246, 1247 (7th Cir.1985); and construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2205, 45 L.Ed.2d

343, 356 (1975); *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384, 385 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Ricci v. Chicago Mercantile Exchange*, 447 F.2d 713, 715 (7th Cir.1971). Keeping this deferential standard in mind, the court now turns to the facts alleged by plaintiff in its complaint.

Defendant Conservation Chemical Company of Illinois ("CCCI") is a corporation organized under the laws of the State of Missouri. CCCI owns or operates a hazardous waste facility located at 6500 Industrial Highway, Gary, Indiana ("Gary site" or "Gary facility"), at which hazardous wastes have been generated, stored, treated, and disposed. The Gary facility includes four surface impoundments into which defendants have placed hazardous wastes. Each of the four surface impoundments is a hazardous waste "disposal facility" within the meaning of 320 Indiana Administrative Code ("IAC") 4.1–1–7.

Defendant Norman B. Hjersted, an individual, is the President and principal stockholder of CCCI. At times relevant hereto, Hjersted was responsible for the overall operation of the Gary site. Hjersted directed and controlled expenditures for repairs, improvements, and operations at the Gary site in excess of $500.00 per month and made decisions concerning environmental compliance at the Gary site. Plaintiff maintains that Hjersted is an "operator" of the Gary facility within the meaning of 320 IAC 4.1–1–7.

Section 3005 of RCRA, 42 U.S.C. § 6925, generally prohibits the operation of any hazardous waste facility except in accordance with a permit. Section 3005(e) of RCRA, 42 U.S.C. § 6925(e), further provides that a hazardous waste facility which was in existence on November 19, 1980 may obtain "interim status" to continue operating until final action is taken by the EPA or an authorized State with respect to its permit application, so long as the facility satisfies certain conditions specified in that section. Those conditions include filing a timely notice with the EPA that the facility is treating, storing, or disposing of hazardous waste, and filing a timely application for a hazardous waste permit. The owner or operator of a facility with interim status must comply with 40 C.F.R. Part 265 or equivalent state regulations.

Section 213(a) of the Hazardous and Solid Waste Amendments of 1984, P.L. 98–616, 98 Stat. 3221 (codified at 42 U.S.C. § 6925(e)(2), provides that by November 8, 1985, the owner or operator of a land disposal facility which was granted interim status by November 8, 1984, shall (a) apply for a final determination of its permit application and (b) certify that the facility is in compliance with all applicable groundwater monitoring and financial responsibility requirements. Section 3005(e)(2) specifically provides that the failure to meet these requirements shall result in the automatic termination of the land disposal facility's interim status.

Section 3006 of RCRA, 42 U.S.C. § 6926, provides that a State may obtain Federal authorization to administer the RCRA hazardous waste management program in that State. On August 18, 1982, U.S. EPA granted to the State of Indiana Phase I interim authorization under Section 3006 of RCRA to carry out certain portions of the RCRA hazardous waste management program in Indiana.

The Gary site is a four-acre parcel of land located in an industrial area of Gary, Indiana. The site is bounded on the west and southeast by the Elgin, Joliet, and Eastern Railroad ("EJ & E Railroad") rights of way, and on the northeast by a vacant industrial lot. The Gary Municipal Airport borders the site along the southeast side. The Grand Calumet River flows in a northeasterly direction approximately one mile south of the site.

Since April of 1967, materials have been brought to the site for treatment, storage, or disposal. These materials contained cyanide and acids, including spent pickle liquor; drums containing various chemical wastes and halogenated and nonhalogenated solvents; separator sludge, and slop oil emulsion solids. These materials are "hazardous wastes" within the meaning of Section 1003(5) of RCRA, 42 U.S.C. § 6903(5),

and the implementing regulations at 320 IAC 4.1–3.3.

Since April of 1967, the defendants have placed hazardous wastes into the four surface impoundments located at and near the site. The four surface impoundments contain hazardous wastes whose constituents include high concentrations of heavy metals including chromium, cadmium, zinc, mercury, arsenic, and lead. Since April of 1967, the defendants have placed hazardous wastes into tanks located at the site. Hazardous wastes have leaked and spilled from these tanks onto the ground and into surface impoundments at and near the site.

On September 28, 1985, the EPA issued to CCCI and other persons an administrative order pursuant to Section 106 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9606. In the Administrative Order, the EPA directed respondents to remove and dispose of certain hazardous wastes contained in approximately forty leaking and deteriorating tanks and in several hundred drums at the Gary facility. In addition, the EPA is conducting a response action at the Gary facility, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, in which the EPA is removing several hundred thousand gallons of PCB-contaminated waste oil from the Gary site.

On August 20, 1985, the State of Indiana filed an administrative complaint against CCCI alleging violations of RCRA regulations at the Gary facility, which include the failure to install and implement a groundwater monitoring system, and violations of requirements for inspection and reporting, security, and freeboard and protective cover for surface impoundments. There has been no order for final relief entered in the state's action.

Pursuant to Section 3010(a) of RCRA, 42 U.S.C. § 6930(a), on August 18, 1980, the defendants notified the EPA that hazardous wastes were being treated, stored, or disposed at the Gary site. Thereafter, pursuant to Section 3005(a) of RCRA, 42 U.S.C. § 6925(a), and 40 C.F.R. § 270.10, on November 18, 1980, the defendants submitted the first part ("Part A") of an appli-

cation for a permit to treat, store or dispose of hazardous wastes at the Gary site.

By virtue of the notification to EPA and the submission of the Part A permit application, the Gary facility was accorded "interim status" under Section 3005(e)(1) of RCRA, 42 U.S.C. § 6925(e)(1), which allowed it to continue to operate pending final administrative disposition of the permit application. 40 C.F.R. § 270.70(a). As the owners or operators of a hazardous waste facility with "interim status," defendants were required to comply with the Interim Status Standards for Owners and Operators of Hazardous Waste Facilities at 40 C.F.R. Part 265 and, after State authorization, the State regulations which then applied, 320 IAC 4.1 Rules 1 through 32.

Section 3005(e)(2) of RCRA, 42 U.S.C. § 6925(e)(2), requires that defendants, as owners or operators of a land disposal facility with interim status, submit the second part, "Part B," of the permit application and certify compliance with the applicable ground-water monitoring and financial responsibility requirements of RCRA on or before November 8, 1985. Section 3005(e)(2) further provides that, if defendants fail to comply with that provision, land disposal units at the facility would lose interim status.

The defendants did not submit any of the certifications required by Section 3005(e)(2) of RCRA, 42 U.S.C. § 6925(e)(2). Because it failed to make the required certifications, on November 8, 1985, the Gary facility lost its interim status to introduce hazardous waste into the four land disposal units at the Gary site. Pursuant to Section 3005(e)(2) of RCRA, 42 U.S.C. § 6925(e)(2) and 320 IAC 4.1–21–1 through 4.1–21–10, defendants are required to submit proper closure and post-closure plans for the four land disposal units to the EPA and the State of Indiana no later than 15 days after termination of interim status. Defendants did not submit proper closure and post-closure plans for the land disposal units at the Gary facility.

The plaintiff EPA brought this action on January 6, 1986, pursuant to its enforcement powers under section 3008(a) of

RCRA, 42 U.S.C. § 6928(a). By its complaint, the EPA seeks injunctive relief requiring the defendants to comply with the various requirements of both RCRA and corresponding state statutes.

## II.

The defendants seek dismissal of certain claims on the grounds that: (a) the claims for injunctive relief have been mooted because of the defendants' cessation of hazardous waste activities, or, in the alternative, that the EPA's enforcement action should be stayed pending the completion of Indiana's administrative enforcement procedure; (b) the EPA has no authority to bring a separate enforcement action concerning closure requirements in a RCRA-authorized state like Indiana; and, (c) Hjersted is not personally liable for any of the alleged violations.

### A. Mootness and/or a Stay

Defendants argue that their submission of a closure plan and their voluntary cessation of hazardous waste treatment operations serve to moot the injunctive relief sought by the EPA. In its complaint, the EPA prays for the following relief: (1) a preliminary and permanent injunction enjoining the defendants from introducing, generating, treating, storing or disposing of any hazardous waste at the Gary facility; (2) an order instructing defendants to inventory and account for any assets removed from the Gary facility; (3) an order directing defendants to design and implement a groundwater monitoring system for the Gary facility; (4) an order requiring defendants to comply with the financial responsibility provisions of RCRA; (5) an order instructing defendants to submit closure and postclosure plans for the Gary facility; (6) an order directing defendants to comply with all interim status regulations pending closure of the Gary facility; (7) an order requiring defendants to post bond pending their compliance with the closure and postclosure plans; (8) the imposition of civil penalties of up to $25,000 per day for each of the defendants' violation of

RCRA and applicable regulations; and, (9) an award of all costs of this action.

■ In arguing that the EPA's claims are moot, the defendants rely heavily upon their own statements that they have voluntarily stopped hazardous waste operations. However, it is well established that "voluntary cessation of allegedly illegal conduct does not moot a case" seeking injunctive relief. *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968); *Dial v. Coler*, 791 F.2d 78, 81 (7th Cir.1986); *Watkins v. Blinzinger*, 789 F.2d 474, 483 (7th Cir.1985); *see also, e.g., Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 1075 n. 14, 89 L.Ed.2d 232 (1986). A case is not moot unless there is reasonable assurance that the questioned conduct will not be resumed. *City of Los Angeles v. Lyons*, 461 U.S. 95, 100–01, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983); *Parks v. Pavkovic*, 753 F.2d 1397, 1404 (7th Cir.1985).

The EPA correctly points out that the present storage of hazardous waste at the Gary facility constitutes continuing violations of RCRA's groundwater monitoring, financial responsibility and site security regulations as specified in the EPA's complaint which seeks civil penalties against both defendants because of their past RCRA violations.

"The burden of demonstrating mootness 'is a heavy one,'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)), and the court finds that the defendants' assurances are not adequate to convince this court that it is unreasonable to expect future violations. This is especially true insofar as plaintiff's complaint alleges that the mere storage of various wastes at the Gary facility constitutes continuing violations.

Defendants also argue, in the alternative, that this court should stay further proceedings pending the Indiana administrative enforcement process. The court finds it unnecessary to determine whether

a stay would be desirable in this case becaue the EPA submitted a copy of a letter, dated February 25, 1986, from the Indiana Attorney General's office informing defendant Hjersted that the Land Pollution Control Division of the Indiana Environmental Management Board was putting its administrative action "on hold" pending the outcome of the present case before this court.[4] Therefore, there is no need to consider a stay of these proceedings.

## B. Enforcement of Closure Plans

Defendants next argue that the EPA lacks enforcement authority to bring this present action concerning closure plans in a RCRA-authorized state like Indiana. Defendants maintain that the EPA has transferred its authority to Indiana and, thus, only Indiana can enforce the closure provisions of its state statutory scheme. In support of this proposition, defendants rely exclusively upon the recent Seventh Circuit decision in *Northside Sanitary Landfill, Inc. v. Thomas*, 804 F.2d 371 (7th Cir.1986). After reviewing the *Northside* opinion, the court finds that defendants' reliance on *Northside* is misplaced.

In *Northside*, the petitioner Northside, a landfill facility providing sanitary and hazardous waste disposal services, sought review before the Seventh Circuit Court of Appeals under section 7006(b) of RCRA, 42 U.S.C. § 6976(b), which provides that "[r]eview of the Administrator's action ... in issuing, denying, modifying, or revoking any permit ... may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person."

Specifically, Northside was challenging certain comments made by the Region V Administrator at a public hearing concerning the denial of its Part B permit application. The Regional Administrator, in response to a question raised at the public hearing, stated that hazardous waste had been disposed of in an area of Northside's facility which Northside claimed had not been used for hazardous waste disposal, and, thus, the closure plan for the facility had to address that area. Two months after the public hearing, the Region V Administrator denied Northside's Part B application for failing to provide adequate information. In addition, Northside's interim status was also terminated. *Id.* at 376. In his order denying Northside's Part B application, the Region V Administrator stated that hazardous waste had been disposed of in the disputed area. The EPA Administrator upheld the Region V determination and Northside sought judicial review pursuant to section 7006(b), 42 U.S.C. § 6976(b). *Id.* at 377.

Northside was not challenging the actual denial of its permit application; rather, it was only attempting to challenge the EPA's comments concerning the area where Northside allegedly disposed of hazardous waste. The Seventh Circuit dismissed Northside's review petition for lack of standing. The court reasoned that Northside lacked standing to challenge the EPA's comments on the scope of the closure plan because the state of Indiana had been authorized under 42 U.S.C. § 6926 to review closure plans. *Id.* at 382. Indiana received Phase I authorization on August 18, 1982, 47 Fed.Reg. 35970, and, as noted earlier, Phase I authorizes states to conduct closure proceedings for interim status facilities. 40 C.F.R. § 265.28. Based on this analysis, the *Northside* court conclud-

---

4. Although defendants' request for a stay of these proceedings was raised in the context of their motion to dismiss, the court finds that it is not limited to the scope of the pleadings in order to make a proper determination on whether to stay this action. Among the relevant considerations in determining whether to stay a federal suit is the pendency and extent of progress at the state level. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15–16, 103 S.Ct. 927, 936–937, 74

L.Ed.2d 765 (1983); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818–819, 96 S.Ct. 1236, 1246–1247, 47 L.Ed.2d 483 (1976); *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 740 F.2d 566, 569 (7th Cir.1984); 1A J. Moore, *Moore's Federal Practice* ¶ 0.203[47] at 2151–54 (1985). Thus the court's acknowledgement and recognition of the Indiana Environmental Management Board's letter concerning the pendency and stage of its proceedings is proper.

ed that the EPA's statements on the scope of closure had no legal effect thus Northside suffered no injury. The court stated:

> The EPA simply does not have the legal authority to determine whether, for what purposes, or which areas of Northside's facility must be closed. *See* 40 C.F.R. § 265.1(c)(4). The State of Indiana alone is responsible for these determinations. *Even if the EPA is dissatisfied with, for example, the enforcement action taken by a state against a specific hazardous waste disposal facility, or the settlement agreement reached between the state and the facility, so long as the state has exercised its judgment in a reasonable manner and within its statutory authority, the EPA is without authority to commence an independent enforcement action or to modify the agreement.* Cf. *Shell Oil Co. v. Train,* 585 F.2d 408, 414 (9th Cir.1978) (EPA recommendation that state deny NPDES variance request constituted advice to state, and was not reviewable in federal court). Hence, in and of itself, the fact that the EPA made comments on the scope of closure in the course of denying Northside's Part B permit application does not constitute an injury to Northside.

804 F.2d at 382. (emphasis added). The defendants here point to the emphasized language in the preceding passage from the *Northside* opinion as support for their proposition that the EPA has no authority to bring an independent enforcement action in Indiana. However, defendants misread the court's statement in an attempt to fashion a broad prohibition against the EPA's enforcement authority. The *Northside* court was not concerned with an enforcement action, instead, it dealt with a party's standing and the EPA's authority under section 7006(b) of RCRA, 42 U.S.C. § 6976(b). In this case, unlike *Northside,* the EPA is acting pursuant to its section 3008(a), 42 U.S.C. § 6928(a), enforcement authority.

■ That the EPA has the power to bring an independent enforcement action, even in a RCRA-authorized state like Indiana, is clear. Section 3008(a) of RCRA,

42 U.S.C. § 6928(a), is entitled "Federal enforcement" and provides in paragraph (1):

> (1) Except as provided in paragraph (2), whenever on the basis of any information the Administrator determines that any person is in violation of any requirement of this subchapter, the Administrator may issue an order requiring compliance immediately or within a specified time period or the Administrator may commence a civil action in the United States district court in the district in which the violation occurred for appropriate relief, including a temporary or permanent injunction.

42 U.S.C. § 6928(a)(1).

The one limitation placed upon the EPA's authority to bring an independent enforcement action, which is set out in paragraph (2), speaks directly to the situation in this case; that is, the EPA's authority to bring an independent enforcement action in a RCRA-authorized state like Indiana. Paragraph (2) provides:

> (2) In the case of a violation of any requirement of this subchapter where such violation occurs in a State which is authorized to carry out a hazardous waste program under section 6926 of this title, the Administrator shall give notice to the State in which such violation has occurred prior to issuing an order or commencing a civil action under this section.

42 U.S.C. § 6928(a)(2).

These statutory provisions could not be more clear. Even after a state received authorization to implement its own statutory scheme on hazardous waste "in lieu of the federal program," Congress intended for the EPA to retain independent enforcement authority in those states. When the EPA wishes to bring an action in a RCRA-authorized state, all that is required of the EPA is that it must first notify that state of its intent. At page two of its complaint, the EPA stated: "In accordance with Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2), the State of Indiana has been

notified of the commencement of this action."

The legislative history of RCRA echoes the obvious Congressional intent of concurrent federal enforcement.

> This legislation permits the states to take the lead in the enforcement of the hazardous wastes laws. However, there is enough flexibility in the act to permit the Administrator, in situations where a state is not implementing a hazardous waste program, to actually implement and enforce the hazardous waste program against violators in a state that does not meet the federal minimum requirements. Although the *Administrator is required to give notice of violations of this title to the states with authorized state hazardous waste programs the Administrator is not prohibited from acting in those cases where the state fails to act,* or from withdrawing approval of the state hazardous waste plan and implementing the federal hazardous waste program pursuant to title III of this act.

5 *U.S.Code Cong. & Admin.News* at 6238, 6269 (1976) (emphasis added).

This statutory scheme of dual enforcement "serves as an incentive to encourage handlers of hazardous waste to adopt environmentally sound procedures and to keep states operating their own programs on their toes." R. Andersen, *The Resource Conservation and Recovery Act of 1976: Closing the Gap,* 1978 Wisc.L.Rev. 635, 664.[5]

The language from the *Northside* case that the defendants here rely on is in accord with the legislative history of RCRA. In *Northside,* the court stated that as long as the state has acted reasonably in enforcing its program, the EPA should not interfere. 804 F.2d at 382. The portion of the legislative history quoted above underscores the need for state and federal cooperation in implementing hazardous waste laws and explains that the EPA "Adminis-

trator is not prohibited from acting in those cases where the state fails to act." 5 *U.S. Code Cong. & Admin.News,* at 6269 (1976).

In this case, the state did file a separate administrative action against the defendants complaining of many of the same violations alleged by the EPA. However, as discussed previously, the state of Indiana's Environmental Management Board has put its action "on hold" pending the outcome of this suit. Because the state has chosen not to act, there is no prohibition to the EPA bringing this independent enforcement action.

### C. Hjersted's Liability

Finally, defendant Hjersted seeks to dismiss plaintiff's complaint on the ground that it fails to state a claim against Hjersted personally. In paragraph five of its complaint, the EPA alleges:

> Defendant Norman B. Hjersted (hereinafter "Hjersted"), an individual, is the President and principal stockholder of CCCI. At times relevant hereto, Hjersted was responsible for the overall operation of the Gary site. Hjersted directed and controlled expenditures for repairs, improvements, and operations at the Gary site in excess of $500.00 per month and made decisions concerning environmental compliance at the Gary site. Hjersted is an "operator" of the Gary facility within the meaning of 320 IAC 4.1-1-7.

In his motion, Hjersted argues that "the only allegation in the complaint regarding his liability is the assertion that he is an 'operator' within the meaning of 320 I.A.C. 4-1-1-7," and that because he is not an "operator" for purposes of the statute, plaintiff's complaint against him should be dismissed. Without deciding whether or not Hjersted is an "operator," the court holds that his reading of the complaint is too narrow.

---

**5.** In January of 1986, Indiana was given Phase II authorization by the EPA. In its order, dated January 31, 1986, granting Indiana final authorization, the EPA Administrator stated: "Indiana also has primary enforcement respon-

sibility, although U.S. EPA retains the right to conduct inspections under section 3007 of RCRA *and to take enforcement actions under sections 3008,* 3013 and 7003 of RCRA." 51 Fed.Reg. 3953, 3954 (emphasis added).

The EPA's complaint invokes its authority under section 3008(a) of RCRA, 42 U.S.C. 6928(a), which provides that "whenever ... any person is in violation of any requirement of [RCRA], the Administrator may ... commence a civil action in the United States district court in the district where the violation occurred." There is no requirement that a defendant be an "operator," indeed, the statute says "any person." Hjersted does not argue that he is not a person for purposes of the law.[6]

Moreover, the Eighth Circuit has recently held that corporate officers and employees who actually make corporation decisions can be found personally liable. In *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726 (8th Cir.1986), the court was faced with a similar situation wherein the defendant officers, like the defendant here, argued that only the corporation could be held liable under RCRA. The *Northeastern* court rejected the defendants' argument and found them personally liable and stated:

> More importantly, imposing liability upon only the corporation, but not those corporate officers and employees who actually make corporate decisions, would be inconsistent with Congress' intent to impose liability upon the persons who are involved in the handling and disposal of hazardous substances.

*Id.* at 745.

Therefore, because Hjersted is a "person" within the meaning of section 3008(a), 42 U.S.C. § 6928(a), and because holding corporate officers liable under RCRA is consonant with Congressional intent, the court finds that the EPA's complaint does sufficiently allege a cause of action against defendant Hjersted; accordingly, the EPA's complaint should survive defendant's motion to dismiss.[7]

**CONCLUSION**

It is, therefore, ORDERED that defendants' motion to dismiss is hereby DENIED.

---

6. Ind.Code 13–7–1–17, which applies to Indiana's Hazardous Waste Management laws, 320 I.A.C. 4–1–5, defines person as "an individual, partnership, copartnership, firm, company, corporation, association, joint stock company, trust, estate, municipal corporation, city, school city, town, school town, school district, school corporation, county, and consolidated unit of government, political subdivision, state agency, or any other legal entity." Ind.Code 13–7–1–17 (West Supp. 1986–87).

7. The court notes that a motion for summary judgment concerning Hjersted's liability, filed by the EPA, is fully briefed and currently pending in this case.