**BIOSPHERICS, INCORPORATED,**
Plaintiff–Appellant,

v.

**FORBES, INCORPORATED; Caroline Waxler, Defendants–Appellees.**

No. 98–1118.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1998.

Decided Aug. 11, 1998.

---

**ARGUED:** Mark Charles Harwell, Morris & Campbell, P.C., Houston, Texas, for Appellant. Douglas D. Connah, Jr., Venable, Baetjer & Howard, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** David J. McManus, Baxter, Baker, Sidle & Conn, P.A., Baltimore, Maryland, for Appellant. Maria E. Rodriguez, Venable, Baetjer & Howard, L.L.P., Baltimore, Maryland; Tennyson Schad, Norwick & Schad, New York City, for Appellees.

Before HAMILTON and MOTZ, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge MOTZ wrote the opinion, in which Judge HAMILTON and Senior Judge WILLIAMS joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

In this defamation action, the district court dismissed a complaint alleging that a bi-weekly business magazine published false and defamatory statements about a corporation. Because the challenged statements are constitutionally protected and therefore not actionable, we affirm.

## I.

This case arises out of a Forbes magazine stock tip story about Biospherics, Inc., a publicly held company with shares traded on NASDAQ.

Forbes regularly publishes a column, "Streetwalker," that provides advice on buying and selling securities. In the January 13, 1997, issue, the magazine ran a story in the "Streetwalker" column, written by Caroline Waxler, stating that Biospherics' stock was overvalued. The article was one of three in the column, each providing advice with regard to a different stock. An arrow appears next to each article; the Biospherics piece is accompanied by a downward arrow, the remaining two by upward arrows. The Biospherics article is titled "Sweet–Talkin' Guys" and focuses on the company's development of D-tagatose, a low calorie, non-fattening sweetener, sometimes referred to as "Sugaree."

In its entirety, the short Biospherics story states:

> Biospherics Inc. (BINC, Nasdaq) is a Beltsville, Md. company ($13.4 million in sales over the last 12 months) that dispenses health care information by phone and writes medical reports for the government. So why is the stock, at a recent 7, trading at 125 times trailing 12–month profits?
>
> *Hype and hope for a natural, noncaloric sugar substitute—called Sugaree—that the company's been "developing" for 15 years.* BINC brags that the substance even slows aging. Bullish analyst reports, paid for by the company, propelled the shares from a split-adjusted 4–3/8 to 9–1/2 in 1996.
>
> Short the stock. *Investors will sour on Biospherics when they realize that Sugaree isn't up to the company's claims.* Even if the FDA okays BINC to produce Sugaree—a big if—its cost to consumers would be at best five times the price of sugar. Meanwhile, Johnson & Johnson and Hoechst are working on their own, cheaper, sweeteners. Monsanto is perfecting its NutraSweet sugar substitute.
>
> *Biospherics shares are easy to borrow; the few independent analysts who follow the company think its stock is worth $2 on current business.*

(Emphasis added).

Six months after publication, Biospherics filed this defamation action against Waxler and Forbes, Inc., publisher of Forbes, identifying the three statements emphasized above as defamatory. Biospherics maintained that as a result of the publication of these statements the value of its stock plummeted, injuring its "reputation and business." The company alleged that the publication caused "the diminution and suppression of the value of its stock, the loss of good will, the expense of restoring its wrongfully injured reputation, the loss of business opportunities, and the loss of its ability to raise funds through public offerings." It claimed damages "in excess of $15 million."

Waxler and Forbes, Inc. (hereafter collectively Forbes), moved to dismiss Biospherics' complaint for failure to state a claim upon which relief could be granted. *See* Fed. R.Civ.P. 12(b)(6). Forbes maintained that: (1) neither the article as a whole nor any of its specific statements could be reasonably interpreted to have a defamatory meaning and, in any event, (2) all of the statements in

the article were entitled to First Amendment protection.

The district court granted the motion. The court concluded that while the challenged statements "might be construed as defamatory," they were nevertheless constitutionally protected. The court reasoned that "this article, and the statements therein, not only clearly are opinion but also do not imply the existence of any fact." This appeal followed, in which we review *de novo* the district court's order granting dismissal for failure to state a claim under Rule 12(b)(6).

## II.

The Supreme Court initially distinguished, with respect to First Amendment protection, between opinions and facts in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (dicta):

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

In the wake of *Gertz*, the lower courts examined a number of factors in determining whether a statement constituted fact or opinion. In *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280 (4th Cir.1987), we recognized *Ollman v. Evans*, 750 F.2d 970 (D.C.Cir.1984) (en banc), as "[p]erhaps the most comprehensive attempt to define the indicia of an 'opinion.'" *Potomac Valve*, 829 F.2d at 1287. The *Ollman* court set forth a four-factor test to identify an opinion: "a trial judge should (1) consider the author['s] or speaker's choice of words; (2) decide whether the challenged statement is 'capable of being objectively characterized as true or false'; (3) examine the context of the challenged statement within the writing or speech as a whole; and (4) consider 'the broader social context into which the statement fits.'" *Id.* at 1287–88 (quoting *Ollman*, 750 F.2d at 979, 983) (footnotes omitted).

In *Potomac Valve* we adopted a variation of this test. Viewing the second *Ollman*

factor—verifiability of the statement in question—as a "minimum threshold issue," we concluded that if a "defendant's words cannot be described as either true or false, they are not actionable." *Potomac Valve*, 829 F.2d at 1288. We further held that even if a statement could be verified, it would not be actionable "if it is clear from any of the three remaining *Ollman* factors, individually or in conjunction, that a reasonable reader or listener would recognize its weakly substantiated or subjective character" as opinion and "discount it accordingly." *Id.*

Three years after *Potomac Valve*, the Supreme Court decided *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), in which the Court clarified that the *Gertz* dicta "was[not] intended to create a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Id.* at 18, 110 S.Ct. 2695. An unsupported opinion that implies defamatory facts, like "'[i]n my opinion Jones is a liar,' can cause as much damage to reputation" and may be just as actionable "as the statement, 'Jones is a liar.'" *Id.* at 19, 110 S.Ct. 2695. Thus, the *Milkovich* Court declined to create "an artificial dichotomy between 'opinion' and 'fact.'" *Id.* It also specifically refused the newspaper's suggestion that it adopt the multi-factored tests "developed by the lower courts (in ... mistaken reliance on the *Gertz* dictum) ... in deciding which is which." *Id.* Foremost among the standards that the newspaper had urged the Court to accept were those set forth in *Ollman* and *Potomac Valve*. *See* Brief for Respondents at 20–49, *Milkovich*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1.

However, the *Milkovich* Court found that "existing constitutional doctrine" established that a publication "must be provable as false before there can be liability under state defamation law, at least ... where a media defendant is involved." *Milkovich*, 497 U.S. at 19–20, 110 S.Ct. 2695 (citing and relying on *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986)). The Court further held that if a statement "cannot 'reasonably [be] interpreted as stating actual facts'" then it merits protection. *Milkovich*, 497 U.S. at 20, 110

S.Ct. 2695 (quoting *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)) (alteration in original). In determining whether a statement could be reasonably interpreted as an assertion of fact, the *Milkovich* Court looked to the language used—whether it was "loose, figurative, or hyperbolic language which would negate the impression that the writer" was stating fact—and the context and "general tenor of the article." *Id.* at 21, 110 S.Ct. 2695.

■ Thus, *Milkovich,* like *Potomac Valve,* placed "primary emphasis . . . on verifiability of the statement" and examined the statement's language and context to determine if it could be interpreted as asserting a fact. *See Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087, 1093 (4th Cir.1993). However, *Milkovich* quite clearly did not adopt *Potomac Valve*'s precise test or lengthy discussion. *See Potomac Valve,* 829 F.2d at 1284–1290. (Indeed, the *Milkovich* dissenters, rather than the majority, relied on a portion of the *Potomac Valve* discussion. *See Milkovich,* 497 U.S. at 31 n. 7, 110 S.Ct. 2695 (Brennan, J., dissenting).) Accordingly, contrary to the parties' suggestions, it is the *Milkovich* analysis, not that of *Potomac Valve,* that we apply here. *Cf. Moldea v. New York Times Co.,* 15 F.3d 1137, 1143–45 (D.C.Cir.1994) (relying on the *Milkovich* analysis rather than that in *Ollman* ). *Milkovich* directs that an opinion may constitute actionable defamation, but only if the opinion can be reasonably interpreted to declare or imply untrue facts. *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695.

### III.

Biospherics alleges that three (and only three) sentences in the short ten-sentence story are defamatory. The company contends that all three are readily verifiable as true or false, and thus overcome the initial *Milkovich* hurdle. This argument carries some force with regard to the last statement, and much less with regard to the other two. However, even assuming that all three statements could be verified, no fact finder could " 'reasonably . . . interpret[ ]' " any of them as stating or implying " 'actual facts.' " *Mil-*

*kovich,* 497 U.S. at 20, 110 S.Ct. 2695 (quoting *Hustler,* 485 U.S. at 50, 108 S.Ct. 876).

■ First, the context and "general tenor of the article," 497 U.S. at 20, 110 S.Ct. 2695, indicate that the piece contains constitutionally protected subjective views, not factual statements. In the long, solemn *Milkovich* article, the author stated that he was "in a unique position of being the only non-involved party to observe" the fight at a high school wrestling match, and Coach Milkovich's later sworn testimony about it, and that Milkovich had repeatedly lied under oath about what actually had happened. *Id.* at 5–6 n. 2, 110 S.Ct. 2695. In contrast, the brief Forbes article contains no claim to first-hand knowledge of facts and certainly no accusations of perjury. It has a breezy rather than solemn tone, appearing in a magazine column denominated "Streetwalker." The piece is titled "Sweet–Talkin' Guys," and is one of three stock tips in the column, each of which is accompanied by arrows, indicating a "buy" or "sell" recommendation.

■ The context and tenor of the article thus suggest that it reflects the writer's subjective and speculative supposition. *Cf. Jefferson County Sch. Dist. v. Moody's Investor's Servs., Inc.,* 988 F.Supp. 1341, 1345 (D.Colo.1997) (investment advice article stating that the outlook on the plaintiff's financial situation was "negative" is an expression of opinion protected by the First Amendment); *National Life Ins. Co. v. Phillips Publ'g, Inc.,* 793 F.Supp. 627, 649 (D.Md.1992) (investment "tips" in newsletter may not have been actionable as defamation because they were "opinion"). We do not propose a "doctrinal exemption" for stock tip articles. *Cf. Moldea,* 15 F.3d at 1146 (no "doctrinal exemption" for book reviews). But rarely would a stock tip article of this tenor and in this context prove actionable. Examination of each of the challenged sentences amply demonstrates that this is not that rare case.

■ The first sentence Biospherics extracts from the article as allegedly defamatory states: "Hype and hope for a natural, noncaloric sugar substitute—called Sugaree—that the company's been 'developing' for 15 years." The statement contains the irrev-

erent and indefinite language ("hype and hope") that permeates the story, all "negat[ing] the impression" that the writer is stating fact. *Milkovich*, 497 U.S. at 21, 110 S.Ct. 2695; *see Levinsky's, Inc. v. Wal–Mart Stores, Inc.*, 127 F.3d 122, 129 (1st Cir.1997) ("The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be actionable.").

Nevertheless, Biospherics claims that it developed Sugaree over a nine-year, not a fifteen-year, period and that the article's misstatement constitutes defamation. Even if fifteen years is wrong and nine correct, that misstatement is not actionable. Had the article stated that the company developed the product over a nine-year period rather than a fifteen-year period it clearly would not have altered the effect on the reader. A statement "is not considered false" and thus actionable "unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (internal quotation marks omitted).

Biospherics also maintains that the quotation marks around the word "developing" imply the company lied about its claims that it developed Sugaree. The quotation marks may suggest that the product is not worth years of development, or that its development has been slow, but neither the quotation marks nor anything else in the article support Biospherics' interpretation. In criticizing Sugaree, the article makes several points, including commenting on the product's cost, competition, and the potential that it will not be approved by the FDA. It does not, however, in any way suggest that Biospherics did not in fact develop the product.

■  Biospherics next challenges the article's statement that "[i]nvestors will sour on Biospherics when they realize that Sugaree isn't up to the company's claims." The company contends that this statement is tantamount to calling it a "liar" when it asserts that Sugaree's prospects are bright. Again, we note the "cute" language, *i.e.*, the play on words with "sour," negating the conclusion

that this is really a statement of fact rather than the tipster's own interpretation.

Moreover, this statement was immediately followed by an explanation:

> Even if the FDA okays [Biospherics] to produce Sugaree—a big if—its cost to consumers could be at best five times the price of sugar. Meanwhile, Johnson & Johnson and Hoechst are working on their own, cheaper, sweeteners. Monsanto is perfecting its NutraSweet sugar substitute.

Thus, the article clearly disclosed the factual bases for its view that "investors will sour on" Sugaree; indeed, these three sentences state the factual basis for the entire article and Biospherics does not challenge their accuracy.

Its failure to do so dooms its challenge to this statement. When "the bases for the ... conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Chapin*, 993 F.2d at 1093; *see also Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir.1995) ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning."); *Moldea*, 15 F.3d at 1144–45 ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation."); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730–31 (1st Cir.1992) (when statement provides factual bases for its conclusion, it is a "personal conclusion" rather than a statement of fact subject to a defamation claim).

■  Finally, Biospherics objects to the last sentence in the story: "Biospherics shares are easy to borrow; the few independent analysts who follow the company think its stock is worth $2 on current business." This sentence states the article's conclusion—indicating the author's assessment is based on the factual statements set forth in the story. It focuses on the company's worth based on *current* business"—its current

earnings and sales discounted by the value attributable to Sugaree because the tipster believes Sugaree will not be a success for the company—and concludes that, calculated on this basis, the value of Biospherics' stock is $2 per share. This conclusion might be defamatory if based on false statements. But, as explained above, Biospherics does not challenge the factual bases for this conclusion, set forth in the three sentences immediately preceding it.

We note that the imprecise, casual language in this statement—the shares are "easy to borrow"—as well as its tenor and context—a breezy stocktip—differ greatly from that of the investigative report on a repair shop's fraud at issue in *Action Repair, Inc. v. American Broadcasting Cos., Inc.*, 776 F.2d 143 (7th Cir.1985), on which Biospherics relies. There, a reporter quoted a judge in charge of the court in which a consumer lawsuit against the repair shop was pending as stating that the consumer had a "good case" against the repair shop. *Id.* at 147. The Seventh Circuit held that this "statement coming from a judge, the 'ultimate expert,'" could be the basis for a defamation action because it was "more prejudicial" than similar statements from "multitudes of anonymous lay people." *Id.* Although Biospherics seeks to equate the statements of a "few independent analysts" as to the value of its stock with that of the judge in *Action Repair*, the analogy fails. Not only do the context and language of the two pieces differ, but the role of stock analysts in assessing the price of a security, even given their highly valued skills, remains a far cry from a presiding judge's role in determining the result in a case before him.

### IV.

■ Ultimately, any reasonable person reading "Sweet Talkin' Guys" would recognize, based on the tenor, language, and context of the article, that the challenged statements constitute a subjective view, not a factual statement. When a speaker plainly expresses "a subjective view, an interpretation, a theory, conjecture or surmise, rather than [a] claim[ ] to be in possession of objec-

tively verifiable [false] facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir.1993). Accordingly, the district court correctly dismissed Biospherics' complaint.

*AFFIRMED.*