MEMORANDUM
 

 DAVIS, District Judge.
 

 I. INTRODUCTION
 

 Plaintiff, Agora, Inc. (“Agora”), a Maryland corporation with its principal offices in Baltimore, has brought this diversity action against defendants Financial-Web.com, Inc. (“F.com”), F.com’s predecessor, Axxess, Inc., and its wholly-owned subsidiary, Stock Detective.com, Inc. The gravamen of Agora’s claim is its allegation that F.com, in a collection of internet web pages found on the F.com website called “StockDetective.com” (“StockDetective”), published defamatory statements of and concerning Agora by characterizing an online financial newsletter published by Ago-ra,
 
 Taipaonline,
 
 as an “unpaid promoter” of the securities on which
 
 Taipaonline
 
 re
 
 *699
 
 ports. Pending before the court is F.com’s motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.
 
 See
 
 Fed.R.Civ.P. 12(b)(2) and 12(b)(6).
 

 No hearing is necessary. For the reasons set forth below, I am persuaded that Agora has failed to state a claim upon which relief may be granted. Because I will dismiss Agora’s defamation claim, I need not finally determine the question of whether this court may properly exercise personal jurisdiction over F.com.
 
 [1]
 

 II. MOTION TO DISMISS STANDARD
 

 A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.”
 
 Conley v. Gibson,
 
 355 U.S. 41, 45^6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);
 
 accord Warth v. Seldin,
 
 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343(1975);
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Motions to dismiss for failure to state a claim are “granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits.” 5A Charles A. Wright
 
 &
 
 Arthur R. Miller, Federal Practice
 
 &
 
 Procedure, Civil 2d § 1349 at 192-93 (1990).
 

 Rule 8(a)(2) requires only that a complaint include “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a). A claimant is not required to “set out in detail the facts upon which he bases his claim” so long as the claim “will give the defendant fair notice of what the plaintiff’s claim is and the grounds upon which it rests.”
 
 Conley,
 
 355 U.S. at 47, 78 S.Ct. 99. Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff.
 
 See Jenkins v. McKeithen,
 
 395 U.S. 411, 421-22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Only when the factual allegations in support of a claim are not well-pleaded (e.g., when they are “functionally illegible” or “baldly conclusory,”
 
 Shuster v. Oppelman,
 
 962 F.Supp. 394, 395 (S.D.N.Y. 1997)), should they not be accepted as true and the claim dismissed.
 

 III. FACTS
 

 As set forth in the Complaint,
 
 Taipaon-line
 
 is the internet version of an investment newsletter,
 
 Tai/pan,
 
 which Agora has published for more than ten years. It has approximately 50,000 subscribers worldwide.
 

 Since March 1997, F.com has published investment information in the nature of editorial content, stock quotes, financial charts and securities data on publicly-traded companies for its online readers free of charge. In July 1999, F.com began furnishing analyses of the disclosure policies of various securities analysts and stock pickers which, like Agora, publish financial and investment newsletters for the benefit of the investing public.
 

 
 *700
 
 F.com’s newsletter analyses are located within the StoekDeteetive website on a webpage denominated “The List.” A hyperlink to The List on the StoekDeteetive
 
 [2]
 
 page asks the reader “[i]s that a real stock analysis or a paid promotion? Find out if a favorite stock source is merely paid puf-fery.” Clicking on The List hyperlink transports the reader to The List itself, which is a webpage entitled “The Stock Detective Directory of Financial Information Sources Containing Paid Small-Cap Company ‘Analysis.’ ”
 

 The introduction at the top of The List describes stock promoters as a “busy group ... constantly spinning new hype for the companies they promote.” It further identifies what it views as the “latest trend ... toward promoters who claim no compensation from the companies they’re writing about, but allude [sic] to unfettered trading in these companies’ shares.” Immediately preceding the table of publications named and the StockDeteetive’s ratings of their disclosure policies is an instruction directing the reader to “[e]heck out the key at the bottom of The List for a complete explanation of the disclosure ratings.”
 

 Immediately preceding the key to the disclosure ratings referred to at the top of The List page, and found at the bottom, is the hyperlinked instruction, “Important: Please Read Stock Detective Guide to Pseudo-Research and Phony Financial Reports-first” (“the Guide”). When the reader activates the hyperlink to the Guide, the reader is advised that the disclosure rating policies of investment newsletters are critical because,
 
 inter alia,
 
 “[i]n today’s information age discerning unbiased research from paid promotion is often difficult. The distinction is important. In order to make the most informed investment decisions, individuals need to know whether the information guiding their actions consists of real reporting and analysis or mere puf-fery.” The Guide uses the disclosure policies of six publications to illustrate the level of varying kinds of disclosure policies. The Guide makes no direct or indirect reference to
 
 Taipaonline.
 

 Upon returning to The List page, the reader finds
 
 Taipaonline
 
 named along with approximately seventy-five other publications.
 
 [3]
 

 Taipaonline
 
 is listed as an online publication. Its disclosure rating is listed as follows: “unpaid promoter.” According to the disclosure rating key provided by F.com, a rating as an “unpaid promoter” signifies “ ‘analysts’ or ‘stock pickers’ who claim they are not paid by the companies for publishing reports, but acknowledge that they do or might trade in shares of the companies they’re writing about.”
 
 [4]
 

 
 *701
 
 By clicking on the word “internet” in column two, immediately adjacent to the
 
 Taipaonline
 
 name on The List, the reader activates a hyperlink which transports the reader directly from the StoekDeteetive website to the
 
 Taipaonline
 
 website. In the “Our Policy” section of the
 
 Taipaon-line
 
 website, Agora explains that
 

 [mjembers of the organization, its officers, directors, employees, and associated individuals may have positions in investments referred herein and may add to or dispose of the same.
 

 But while we encourage our editors and analysts to put their own money where their mouth is, the editors, staff, and associates of the
 
 Taipan
 
 Group, as well as its directors, employees and associated individuals, are prohibited from trading on this information until after the information is published — i.e., at least 3 days after our publication has been mailed to our subscribers.
 

 Agora alleges that it does not provide “paid small caps ‘analysis.’ ” Complaint at ¶¶ 17-20. Agora further contends that it does not engage in “pseudo-research” and “mere puffery,” but engages in “real reporting and analysis”
 
 Id.
 
 Finally, Agora contends that it has never received any fees from stock issuers or their representatives to recommend a stock.
 
 See id.
 
 Agora singles out for particular attention F.com’s use of the term “unpaid promoter” in association with
 
 Taipaonline. See id.
 
 at ¶ 18. Nevertheless, Agora does not contend that Taipaonline’s disclosure policy, which Agora acknowledges is directly accessible by a StoekDeteetive reader by way of a hyperlink to Taipaonline’s website, is inconsistent with The List’s definition of an “unpaid promoter.”
 

 IV. ANALYSIS
 

 Under Maryland law (which the parties agree is applicable in this case), in order to make out a prima facie case of defamation the plaintiff must allege that (1) the defendant made a defamatory communication, i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement to be defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm.
 
 See Peroutka v. Streng,
 
 116 Md.App. 301, 311, 695 A.2d 1287, 1293 (1997) (citing
 
 Shapiro v. Massengill,
 
 105 Md.App. 743, 772, 661 A.2d 202,
 
 cert. denied,
 
 341 Md. 28, 668 A.2d 36 (1995)).
 

 Settled First Amendment doctrine establishes that the burden is on the plaintiff to prove a publication is false before liability may attach under state defamation laws, at least where a media defendant is involved.
 
 See Milkovich v. Lorain Journal Co.,
 
 497 U.S. 1, 16, 19-20
 
 &
 
 n. 6, 110 S.Ct. 2695, 111 L.Ed.2d 1 (citing
 
 Philadelphia Newspapers, Inc. v. Hepps,
 
 475 U.S. 767, 776-78,106 S.Ct. 1558, 89 L.Ed.2d 783 (1986));
 
 Biospherics, Inc. v. Forbes, Inc.,
 
 151 F.3d 180, 183 (4th Cir.1998). The parties do not dispute the truism that F.com’s website is entitled to the same level of First Amendment protection to which any hard-copy financial newsletter is entitled.
 
 See Lowe v. S.E.C.,
 
 472 U.S. 181,
 
 *702
 
 210 & n. 58,105 S.Ct. 2557, 86 L.Ed.2d 130 (1985) (“To the extent that the chart service contains factual information about past transactions and market trends, and the newsletters contain commentary on general market conditions, there can be no doubt about the protected character of the communications .... ”);
 
 Lovell v. City of Griffin,
 
 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938) (“The liberty of the press is not confined to newspapers and periodicals ... The press in its historic connotation comprehends every sort of publication which affords á vehicle of information and opinion.”);
 
 Ginsburg v. Agora, Inc.,
 
 915 F.Supp. 733, 739-40 (D.Md.1995) (citing
 
 Lowe,
 
 stating that “there is considerable authority ... for the proposition that investment newsletters are subject to the same protection under the First Amendment as any other publication”);
 
 Reliance Ins. Co. v. Barron’s,
 
 442 F.Supp. 1341, 1345 (S.D.N.Y.1977) (stating that an investment magazine’s “expos[ure] to the public in plain language” of information implicit in a company’s disclosure under federal securities law was “an important function of a free financial press” which should not be limited by damages actions).
 

 Defendants’ principal contention in support of their challenge to the legal sufficiency of the one-count complaint is that plaintiff has sought to base its claim on a statement of opinion whose factual basis is fully disclosed. Though a statement of opinion is not'immune from suit, a statement is not actionable unless it asserts a provably false fact or factual connotation.
 
 See Biospherics, Inc.,
 
 151 F.3d at 184;
 
 Chapin v. Knight-Ridder, Inc.,
 
 993 F.2d 1087, 1093 (4th Cir.1993). In divining'the line between statements of fact and opinion,
 
 Milkovich
 
 places primary emphasis on the verifiability of the statement and examines the statement’s language to determine if it may be interpreted as asserting a fact.
 
 See Biospherics, Inc.,
 
 151 F.3d at 184;
 
 Chapin,
 
 993 F.2d at 1093. .
 

 Since the determination of whether a statement is capable of a defamatory meaning is a question of law to be determined by the court,
 
 see Batson v. Shiflett,
 
 325 Md. 684, 723, 602 A.2d 1191, 1211 (1992);
 
 Peroutka,
 
 116 Md.App. at 311, 695 A.2d at 1293, it is my task to “examine for [myself] the statements in issue and the circumstances under which they were made to see whether they are of a character which the principles of the First Amendment ... protect.”
 
 New York Times Co. v. Sullivan,
 
 376 U.S. 254, 284-85, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (quoting
 
 Pennekamp v. Florida,
 
 328 U.S. 331, 335, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946)). Pursuant to
 
 Milkovich,
 
 therefore, I must determine whether the alleged statements may reasonably be interpreted as stating or implying actual facts about Agora.
 
 See Milkovich,
 
 497 U.S. at 20, 110 S.Ct. 2695 (citing
 
 Hustler Magazine v. Falwell,
 
 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988));
 
 Biospherics, Inc.,
 
 151 F.3d at 184 (citing Milkovich);
 
 Chapin,
 
 993 F.2d at 1093.
 

 The burden, therefore, is on Agora to allege facts which, if proved, would establish, as a threshold matter, the falsity of the alleged defamatory statements that were published by F.com.
 
 See Milkovich,
 
 497 U.S. at 16, 19-20, 110 S.Ct. 2695;
 
 Conley,
 
 355 U.S. at 46-47, 78 S.Ct. 99; Fed.R.Civ.P. 8(a). Agora asserts that it has met its burden because it has alleged that it does not engage in “mere puffery,” that it does not engage in “paid small caps ‘analysis’ ” or “pseudo-research” and it is not an “unpaid promoter.” Accordingly, it contends, the statements are verifiable as true or false. I reject this simplified approach as inconsistent with controlling case law.
 

 Rather, recognizing that “words have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed,”
 
 Peroutka,
 
 116 Md. App. at 311-12, 695 A.2d at 1293 (citing
 
 Batson,
 
 325 Md. at 723, 602 A.2d at 1211), I am persuaded after a mature review of the allegations of the Complaint and the
 
 *703
 
 content of the publication at issue that the statements are not capable of defamatory meaning as to
 
 Taipaonline
 
 because (1) the statements regarding “real” reporting, “pseudo research,” “paid small caps ‘analysis’ ” and “mere puffery” (collectively “introductory statements”) cannot reasonably be interpreted as stating actual facts about
 
 Taipaonline;
 
 and (2) when evaluated under
 
 Milkovich
 
 and
 
 Peroutka,
 
 the rating of
 
 Taipaonline
 
 as an “unpaid promoter” is not actionable because it constitutes an expression of opinion based on disclosed or readily available facts. Accordingly, I will grant the motion to dismiss.
 

 A. The Introductory Statements Cannot Reasonably Be Interpreted As Stating Actual Facts About
 
 Tai-paonline
 

 The introductory statements, when read in context, indicate that they have the purpose and effect of pointing out that some publications engage in “paid small cap ‘analysis,’ ” “pseudo research” and “mere puffery,” instead of “real reporting and analysis,” and they generally introduce the reader to the asserted relevance of investment newsletters’ disclosure policies in evaluating the objectivity of financial and investment reporting. Furthermore, the introductory statements are extracted from and summarize the Guide, which advises the reader in more specific terms of the importance of evaluating newsletter disclosure policies. The Guide illustrates varying disclosure policies by evaluating the policies of six named publications.
 
 Taipaonline
 
 is not among these named publications. Nowhere within the Guide or the List is
 
 Taipaonline
 
 named in connection with or in close proximity to the introductory statements.
 

 Thus, in proper context, F.com’s use of unquantifiable and indeterminate terms such as “real” and “pseudo,” and its generalized characterization of the practice of some publications as “puffery” cannot “reasonably [be] interpreted as stating actual facts” about Agora or its publication.
 
 Milkovich,
 
 497 U.S. at 20, 110 S.Ct. 2695 (citing
 
 Hustler Magazine v. Falwell,
 
 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988));
 
 Biospherics, Inc.,
 
 151 F.3d at 184 (citing Milkovich). Rather, like the statements in
 
 Biospherics,
 
 in which Forbes magazine characterized the product development by the plaintiff company as “hype and hope,”
 
 Biospherics, Inc.,
 
 151 F.3d at 185, F.com’s statements about “real reporting,” “mere puffery” and “pseudo analysis” are properly viewed, in context, to consist entirely of subjective, generalized statements about the importance of objectivity in financial reporting through the use of “irreverent and indefinite language.”
 
 See 'id.
 

 I have no doubt, moreover, that the defendants’ use of the introductory statements, since they are not particularly directed at
 
 Taipaonline,
 
 is entirely consistent with “the rhetorical hyperbole and imaginative expression which has added much to the discourse of our Nation.”
 
 Milkovich,
 
 497 U.S. at 16-17, 20, 110 S.Ct. 2695 (citing
 
 Hustler Magazine v. Falwell,
 
 485 U.S. 46, 53-55, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988);
 
 Biospherics, Inc.,
 
 151 F.3d at 184-85;
 
 Peroutka,
 
 116 Md.App. at 321, 695 A.2d at 1298.) The use of generalized subjective valuations, rhetorical hyperbole and imaginative expression “negat[es] the impression that the writing is stating fact.”
 
 Biospherics, Inc.,
 
 151 F.3d at 185 (citing
 
 Milkovich,
 
 497 U.S. at 21, 110 S.Ct. 2695). These statements cannot, I conclude, form the basis for a defamation action.
 

 B. The Rating of
 
 Taipaonline
 
 As An “Unpaid Promoter” Is Not Actionable Because It Constitutes An Opinion Based On Disclosed Or Readily Available Facts
 

 I next determine whether publication of the rating of
 
 Taipaonline
 
 as an “unpaid promoter” is actionable. 1 conclude on the facts as alleged by Agora that it is not.
 

 
 *704
 
 Maryland courts remain cognizant of Milkovich’s holding that the First Amendment does not create a wholesale defamation exception for anything that might be labeled opinion.
 
 See Peroutka,
 
 116 Md. App. at 322, 695 A.2d at 1298;
 
 Batson,
 
 325 Md. at 724, 602 A.2d 1191 (citing
 
 Milko-vich,
 
 497 U.S. at 18, 110 S.Ct. 2695). A statement, “even if expressed in terms of an opinion, can be defamatory under certain circumstances regardless ■ of whether the statement concerns a public figure or private person.”
 
 Peroutka,
 
 116 Md.App. at 321, 695 A.2d at 1297. When a statement is made in the form of an opinion, it becomes actionable “only if it implie[s] the allegation of undisclosed facts as the basis for the opinion.”
 
 Id.
 
 at 323, 695 A.2d at 1298 (citing
 
 Milkovich,
 
 497 U.S. at 19, 110 S.Ct. 2695).
 

 The principle that opinions based on disclosed facts are protected is well established.
 
 See, e.g., Biospherics, Inc.,
 
 151 F.3d at 185;
 
 Chapin,
 
 993 F.2d at 1093 (stating that when “the bases for the ... conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related”);
 
 Standing Comm on Discipline v. Yagman,
 
 55 F.3d 1430, 1439 (9th Cir.1995) (“A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning.”);
 
 Moldea v. New York Times Co.,
 
 15 F.3d 1137, 1144-45 (D.C.Cir.1994) (“Because the reader understands that such supported opinions represent the writer’s interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.”);
 
 cf. Phantom Touring, Inc. v. Affiliated Publications,
 
 953 F.2d 724, 731 n. 13 (1st Cir.1992).
 

 When a statement is made in the form of an opinion, Maryland courts follow the Restatement (Second) of Torts, which distinguishes between “pure”, opinions— those based on disclosed or known facts-— and “simple” opinion — those based on undisclosed facts.
 
 See Peroutka,
 
 116 Md. App. at 323, 695 A.2d at 1298-99. According to the Restatement, in circumstances where the defendant bases his expression of a “derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement — nor for the expression of opinion, so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion.”
 
 Peroutka,
 
 116 Md.App. at 323, 695 A.2d at 1299 (citing Restatement (Second) of Torts § 566 cmt. c. (1976)).
 

 The example commonly used to illustrate the line between actionable and protected statements of opinion is provided by
 
 Milkovich:
 
 “[Ujnlike the statement, ‘In my opinion Mayor Jones is a liar,’ the statement, ‘In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin,’ would not be actionable.”
 
 Milkovich,
 
 497 U.S. at 20, 110 S.Ct. 2695;
 
 Peroutka,
 
 116 Md.App. at 321, 695 A.2d at 1298 (repeating example).
 

 F.com’s rating of
 
 Taipaonline
 
 as an “unpaid promoter,” when analyzed under
 
 Peroutka
 
 and
 
 Milkovich,
 
 is fully protectable opinion based on disclosed facts. As alleged in the Complaint, F.com’s website clearly discloses the facts upon which its assessment of
 
 Taipaonline
 
 as an “unpaid promoter” is based. In particular, F.com discloses in the key to The List that it arrived at the opinion that
 
 Taipaonline
 
 is an “unpaid promoter” because
 
 Taipaonline
 
 ’s publishers “claim they are not paid by the companies for publishing reports, but acknowledge that they do or might trade in the shares of the companies they’re writing about.” Complaint at ¶ 11.
 

 Moreover, F.com puts the reader on notice that the ratings are based on F.com’s evaluation of disclosure policies and not on any other undisclosed facts; the rating key informs the reader that the disclosure
 
 *705
 
 “ratings are the opinion of the publisher as defined above. [They] do[ ] not purport to be a complete analysis of the aforementioned media.”
 
 Id. Peroutka,
 
 116 Md.App. at 323, 695 A.2d at 1299 (stating that the opinion is protected “so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion.”).
 

 The factual basis for the statement that
 
 Taipaonline
 
 satisfies F.com’s formulation of “unpaid promoter” is confirmable, as acknowledged by Agora, by activating the hyperlink adjacent to Taipaonline’s name on The List and accessing Taipaonline’s own website.
 
 See id.
 
 at ¶ 14-15. At
 
 Taipaonline
 
 ’s site, the reader can readily review Taipaonline’s disclosure policy, which reveals that its “[mjembers, ... officers, directors, employees, and associated individuals may have positions in investments referred herein and may add to or dispose of the same.”
 
 Id.
 
 at ¶ 16. Further, the disclosure policy reveals that “while we encourage our editors and analysts to put their own money where their mouth is, the editors, staff, and associates ... as well as its directors, employees and associated individuals, are prohibited from trading on this information until after the information is published — i.e., at least 3 days after our publication has been mailed
 
 ..'..’’Id.
 

 It is clear from the facts alleged by Agora that, like the statement “Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin,”
 
 Milkovich,
 
 497 U.S. at 20, 110 S.Ct. 2695;
 
 Peroutka,
 
 116 Md.App. at 321, 695 A.2d at 1298, the statement by F.com, which in essence reads “Taipaonline is an unpaid promoter because it claims that it is not paid by the companies for publishing reports but acknowledges that it does or might trade in the shares of the companies it writes about,” is not actionable.
 
 See Peroutka,
 
 116 Md.App. at 320, 325, 695 A.2d at 1297, 1299 (“If the facts from which a defendant forms his or her opinion are given or are readily available and those facts cannot be proved false, the defendant is not subject to liability for the opinion.”).
 

 Agora argues that F.com may still be subject to liability, notwithstanding the disclosure of the facts upon which F.com’s opinion was based, because F.com’s assessment that
 
 Taipaonline
 
 rates as an “unpaid promoter” based on Taipaonline’s disclosure policy is erroneous. In other words, Agora takes umbrage at F.com’s
 
 redefinition
 
 (for its purposes) of the term “promoter,” which Agora contends has an accepted meaning in securities markets. Agora’s argument in this regard is based on a flawed interpretation of
 
 Milkovich;
 
 nothing therein prohibits the appropriation and redefinition of so common a word.
 
 [5]
 
 
 *706
 
 Indeed, if the word “murderer” does not enjoy such immutability in the law of defamation, then it is difficult to see why the word “promoter” should be so regarded.
 
 Cf. Oilman v. Evans,
 
 750 F.2d 970, 1023 n. 67 (D.C.Cir.l984)(en banc)(Robinson, C. J., dissenting in part),
 
 cert. denied,
 
 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
 

 V. CONCLUSION
 

 For the reasons set forth above, I will grant F.com’s motion to dismiss for failure to state a claim upon which relief may be granted.
 

 [1]
 

 . Defendants are paradigms of modern internet businesses and have a presence outside of their home states only in "cyberspace.” Thus, defendants contend that it would be constitutionally impermissible for a state or federal court in Maryland to exercise personal jurisdiction over them on state law claims. Agora has requested an opportunity to conduct jurisdictional discovery. Under the circumstances disclosed by the parties' submissions, I would be inclined to grant the request. For present purposes, however, I am satisfied that Agora has made a sufficient prima facie showing to justify my consideration of the legal sufficiency of its corn-plaint.
 
 See Mylan Labs., Inc. v. Akzo, N.V., 2
 
 F.3d 56, 60 (4th Cir.l993)(when the court determines the issue of personal jurisdiction without a hearing, plaintiff's burden is to establish prima facie that personal jurisdiction may be exercised). If my dismissal of this case under Fed.RXiv.P. 12(b)(6) is reversed on appeal and remanded without any ruling on the personal jurisdiction issue, and if Agora does not consent to the transfer of this case to a district in which the defendants are unquestionably subject to personal jurisdiction, I shall consider further whether to permit jurisdictional discovery.
 

 [2]
 

 . StoekDeteetive focuses on publicly-traded securities listed on the over-the-counter bulletin board ("OCTBB”), an electronic securities quotation system regulated by the National Association of Securities Dealers ("NASD”). The OCTBB lists small startup companies that have not been listed on any national exchange and are not subject to federal reporting obligations.
 

 [3]
 

 . The List of 75 publications is a table comprised of three columns. From left to right, the first column lists each publication in alphabetical order; the middle column indicates the nature of the publication, with a hyperlink to that publication’s website if the publication is available online; and, the third column indicates StockDetective’s analysis of the publication’s disclosure policy.
 

 [4]
 

 . The complete ratings section provides:
 

 Blanket Disclosure — one disclaimer fits all the companies discussed in a publication or website; reader is not informed whether the disclaimer applies to all, some or none of the companies
 

 Full Disclosure — individual disclaimers for each company profile, including the form and amount of all compensation received by the publisher; meets guidelines established by Section 17(b) of the Securities Act of 1933
 

 Identifiable Disclosure — a disclaimer accompanies each story about a specifically identified stock; better than blanket disclosure b,ut still falls short of the SEC required description of compensation
 

 Insufficient Disclosure — insufficient or no information at all is provided to allow the reader to determine that a fee was paid for the “story” or research.
 

 
 *701
 
 N/A — disclosure information was not available to Stock Detective as of the date of the report
 

 Unpaid Promoter — “analysts” or "stock pickers” who claim they are not paid by the companies for publishing reports, but acknowledge that they do or might trade in shares of the companies they're writing about
 

 Note: The ratings associated with the publications listed in the above referenced table were compiled by Stock Detective from information or materials believed to be accurate. These ratings are the opinion of the publisher as defined above. This does not purport to be a complete analysis of the aforementioned media. Any person(s) with information which may be contrary to these findings or having information which should be added to this list, is encouraged to contact the editor at
 
 editor@st.ockdetec-tive.com.
 

 Complaint at ¶ 11.
 

 [5]
 

 . Agora fundamentally misreads the import of the language from
 
 Milkovich
 
 on which it relies. The Court in
 
 Milkovich
 
 qualified the principle that an opinion based on disclosed facts is shielded from defamation actions by noting that "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete,
 
 or if his assessment of these is erroneous,
 
 the statement may still imply a false assertion of fact.”
 
 Milkovich,
 
 497 U.S. at 18-19, 110 S.Ct. 2695 (emphasis added).
 

 Agora mistakenly equates an "erroneous assessment” of facts with a disagreeable opinion. This reading runs not. only contrary to the well established principle that an opinion based on fully disclosed facts is not subject to defamation actions, but is contrary to the quoted language from
 
 Milkovich.
 
 Rather than addressing whether the opinion itself is "erroneous,” the above quoted passage in
 
 Milkovich
 
 is directed to the speaker’s stated understanding of the
 
 fads
 
 upon which she bases her opinion. When that understanding, or "assessment” of the facts is “erroneous,” or incorrect or incomplete, then the opinion may not be protected. The passage does not. purpoit to create liability in circumstances where, as here, the plaintiff believes an opinion to be "erroneous.”
 
 Cf. Kapiloff v. Dunn,
 
 27 Md.App. 514, 533, 343 A.2d 251, 264 (1975) (“An opinion is a comment on or an interpretation of fact. It is always related to the facts it purports to interpret. Depending on its conformity with sound critical standards, the opinion may be ‘sound’ or ‘unsound,’ ‘good’ or ‘bad,’ reasonable' or ‘unreasonable,’ but never true or false.' ”).
 

 Since Agora has not argued that F.com's assessment of Agora’s disclosure policy, as
 
 *706
 
 that assessment is set forth in F.com’s definition of an "unpaid promoter,” is erroneous, incorrect, incomplete or inconsistent with the disclosure policy set forth on Taipaonline's website, the opinion that
 
 Taipaonline
 
 rates as an "unpaid promoter” is fully protected.